McCALL et al., Appellants,

v.

MAREINO, Appellee.

[Cite as *McCall v. Mareino* (2000), 138 Ohio App.3d 794.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 76552.

Decided July 31, 2000.

*Todd J. McKenna,* for appellants.

*Keller & Curtin, Joseph G. Ritzler,* for appellee.

James D. Sweeney, Judge.

Plaintiffs-appellants Walter McCall and Margaret Ellis appeal from the denial of their alternatively phrased motion for judgment notwithstanding the verdict or for new trial.[1] See Civ.R. 59(A)(4), (6) and (7).[2] For the reasons adduced below, we affirm.

A review of the record on appeal indicates that on January 31, 1994, at approximately 7:00 a.m., McCall was driving his automobile along Ivanhoe Road in Cleveland, Ohio, at approximately twenty-five miles per hour. Ellis was a passenger in McCall's vehicle. At that point, according to McCall, a vehicle operated by defendant-appellee Patrick Mareino, quickly accelerated into the intersection of Mandalay Road without stopping at the stop sign and struck the right rear of McCall's vehicle. At the time of the accident, McCall claimed that the traffic signal near Ivanhoe and Mandalay Roads was flashing yellow, and that the impact caused his vehicle to spin around two revolutions before coming to a stop in a direction opposite of the one he had been traveling. McCall admitted to walking over to exchange information with Mareino. McCall claimed that he was staggering and disoriented. McCall claimed that the right rear tire was deflated from the impact and that the right rear body panel was rubbing against the tire.[3] McCall testified that his mother came to the scene to drive the plaintiffs away to the Sixth District Police Station to file an accident report (and were turned away

---

1. The action was originally filed on January 26, 1996, in Cuyahoga County Common Pleas Court case No. 302360, and voluntarily dismissed by plaintiffs through a settled and dismissed without prejudice entry on January 13, 1997, one day before the scheduled trial was to commence. In the refiled complaint of December 24, 1997, McCall and Ellis list a common street for their respective residences, namely, 1782 and 1784 Alcoy Road, Cleveland, Ohio. However, the separate medical records for the two plaintiffs obtained from Cleveland Chiropractic Clinic identifies 1782 Alcoy Road as the address for both patients. In closing argument, plaintiffs' counsel referred to Ellis as Mrs. McCall.

2. Civ.R. 59(A)(4), (6) and (7), New Trials, provides:

   "(A) Grounds
   A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following:
   "* * *
   "(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
   "* * *
   "(6) The judgment is not sustained by the weight of the evidence; * * *;
   "(7) The judgment is contrary to law."

3. Defendant's Exhibit E, a photocopy of the damaged area of McCall's vehicle, depicts a minor dent to the front of the right rear wheel well trim. Plaintiffs presented no evidence to show repair or replacement of the tire.

without being permitted to file a report, according to McCall), then to work. During the work shift, McCall stated that he went to the downtown main police station to file a report, but no report is in evidence. After work, McCall went to the Kaiser Hospital emergency room on Fairhill Road at 7:32 p.m. on the date of the accident where he was treated and released. The emergency room records indicated McCall advised the emergency room staff that Ellis and Mareino were not injured, yet McCall denied the staff ever asking such a question. In these initial emergency room records, McCall complained of right leg and hip pain, no indication of neck pain or lower back pain. However, the records indicated no injuries or traumatic abnormalities with McCall, and did not prescribe additional treatment or therapy. McCall testified that he had no cuts, broken bones, or externally visible bruising or injuries, and never told Mareino that he was uninjured at the scene. There was no claim in the case for physical damage to the car operated by McCall, which car was titled in McCall's mother's name, and no evidence of repair costs to that vehicle.

McCall was treated by Dr. Wenning Zhao, a doctor of chiropractic, at Cleveland Chiropractic Clinic from May 10, 1994 to December 1994, with complaints of soft-tissue injury to his lumbar area and neck, incurring chiropractic services for seventy-eight separate visits in the amount of $16,730. These amounts were not covered by his health insurer, Kaiser Permanente at work. McCall also received three visits with Dr. Jeffrey Morris, an orthopedic surgeon at Beachwood Orthopedic Associates, beginning on February 2, 1995, for complaints of pain in the neck and low back, yet Morris never reviewed the Kaiser Permanente records on McCall. An MRI performed by Morris revealed some arthritis in the form of a degenerative disk problem at C5 through 7, and L2 through 5, a common condition of aging according to Morris, and that McCall did not follow through on the suggested course of therapy for alleviation of pain associated with the degenerative disk problem. Dr. Morris noted that the degenerative disk disease pre-existed the collision and this disk condition can cause the symptoms of pain in the neck and back. Morris noted that McCall exhibited a restriction in his range of motion in a straight-leg raising test. Morris opined that the collision caused the disc problem to become symptomatic.

McCall took early retirement after twenty-nine and a half years from his employment at Ameritech allegedly because he could not function in his duties due to the ongoing pain and he would have been terminated because of his absences from work.

Ellis also complained of soft-tissue injuries to her lumbar area, neck, and shoulder blades, which pain started three days after the collision. She claimed to have presented herself to the emergency room at the Cleveland Clinic on February 10, 1994, complaining of pain, yet no medical record for this event was

put into evidence. She sought treatment at Kaiser Permanente through the Cleveland Clinic's emergency room on July 14, 1994, complaining of muscle spasms in her back, shoulders, neck and legs. On that date, Kaiser diagnosed general myalgia,[4] a urinary tract and trichomonas infection (infections which are not relevant to the collision), ordered antibiotics and a muscle relaxant and gave her a follow-up appointment date. From June 11, 1994 to December of 1994, Ellis was treated by Zhao at Cleveland Chiropractic Clinic, incurring chiropractic services in the amount of $15,882. Ellis was treated briefly by Dr. Morris Jones and Dr. Grayson in 1994. In addition, Ellis was treated by Dr. Gerald Yosowitz at Beachwood Orthopedic Associates, upon the referral by McCall, originally for a complaint concerning a sinus problem, eight times between March 1995 through March 1996, incurring services in the amount of $3,681.50. Dr. Yosowitz testified that seventy percent of the patients seen at Beachwood Orthopedic Associates are litigating some type of claim involving the injury for which they are seeking medical attention. Dr. Yosowitz, though finding no objective signs of injury upon neurological and orthopedic examination, including x-rays and an MRI, diagnosed Ellis as suffering from chronic dorsal and lumbosacral myofascitis,[5] which he attributed to the collision because the patient said she was hurt and that the pain originated after the collision. Yosowitz admitted that the only basis for his opinion that Ellis had sustained injury was Ellis's subjective complaints of pain to him. Prior to his deposition on April 1, 1999, Yosowitz admitted to not having reviewed Ellis's medical records from Kaiser or Cleveland Chiropractic Clinic; the only information he had about the collision was gathered directly from Ellis.

The defense heard testimony from Mareino that indicated that he came to a complete stop before entering the intersection of Ivanhoe and Mandalay Roads. Mareino stated that the traffic light for Ivanhoe Road had turned red, so he started to inch forward as the Ivanhoe Road traffic, which he observed, had either stopped or was slowing down. As he pulled forward to initiate a left-hand turn, the plaintiff's car "came out of nowhere and \*\*\* touched." McCall's car skidded in a small semi-circle without changing the overall direction it had been traveling and came to a rest in the middle of the roadway. Mareino pulled his vehicle over to the curb and got out, meeting McCall in the street. The two drivers exchanged information and Mareino observed that McCall did not exhibit any injuries. In fact, according to Mareino, McCall told him that McCall and Ellis were okay. Mareino observed a small scratch or dent by the wheel well of

---

4. The term myalgia refers to muscular pain. Stedman's Medical Dictionary (5th Ed.1982) 913.

5. The term myofascitis, also referred to as myositis fibrosa refers to the inflammation of a muscle through the interstitial growth of fibrous tissue. Stedman's Medical Dictionary (5th Ed.1982) 922.

plaintiff's car; no other damage to the plaintiff's vehicle was evident. The only damage to Mareino's vehicle was a red strip on the bumper that had popped off. Mareino sustained no physical injuries and observed McCall drive his vehicle from the scene.

Charles Vokaty, the Acting Chief of the city of Cleveland's Traffic Signal Department, testified for the defense that, contrary to the assertion of McCall, the traffic signal on Ivanhoe Road at the scene of the collision was operating in the normal sequence and was not set for flashing yellow.

Prior to closing arguments, the trial court granted a directed verdict in favor of plaintiffs and against defendant on the issue of negligence. Only the issues of whether the collision proximately caused the injuries and damages, and the appropriate amount of compensation for those injuries, were considered by the jury. The jury returned a unanimous defense verdict.

The lone assignment of error provides:

"the trial court erred in failing to grant judgment notwithstanding the verdict, or alternatively, for a new trial where there were inadequate damages, and the verdict was against the manifest weight of the evidence. the plaintiffs were entitled to J.N.O.V. because reasonable minds could only come to the conclusion that plaintiffs were entitled to damages as a matter of law."

The standard of review for a motion for a new trial ruling is the following:

"It is well established that a trial court's decision whether to grant a new trial lies within the sound discretion of the trial court. *Verbon v. Pennese* (1982), 7 Ohio App.3d 182, 7 OBR 229, 454 N.E.2d 976. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142. In reviewing a trial court's ruling on a motion for a new trial, an appellate court should view the evidence before it favorably to the trial court's action, rather than the jury's verdict, where the trial court's decision involves questions of fact. *Sanders v. Mt. Sinai Hosp.* (1985), 21 Ohio App.3d 249, 253, 21 OBR 292, 296–297, 487 N.E.2d 588, 593–594; *Richard L. Bowen & Assoc. v. Kassouf* (June 22, 1995), Cuyahoga App. Nos. 66801, 67018, unreported, at 9, 1995 WL 371294. A judgment supported by some competent, credible evidence going to the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. Since the trial judge is best able to view the witnesses and observe their demeanor when he weighs the credibility of the offered testimony, there is a presumption that the findings of the trier of fact are correct. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d

77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276. The weight to be given the evidence and the credibility of the witnesses are primarily for the finder of fact. *Shore, Shirley & Co. v. Kelley* (1988), 40 Ohio App.3d 10, 531 N.E.2d 333." *Star Bank Nat. Assn. v. Cirrocumulus Ltd. Partnership* (1997), 121 Ohio App.3d 731, 743–744, 700 N.E.2d 918, 926; also see *Driscoll v. Norprop, Inc.* (1998), 129 Ohio App.3d 757, 763, 719 N.E.2d 48, 51–52.

We are also mindful that:

"The trial court's consideration of this weight [of the evidence] and credibility [of the witnesses] is not in the substantially unlimited sense employed by the jury but in a more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the weight of the evidence. *Rohde v. Farmer* (1970), 23 Ohio St.2d 82 [52 O.O.2d 376], 262 N.E.2d 685, paragraph three of the syllabus. A trial judge should abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. *Bland v. Graves* (1993), 85 Ohio App.3d 644, 620 N.E.2d 920.

"* * *

"[A] verdict rendered in favor of the defense does not necessarily create a manifest injustice where the plaintiff does not receive any damages. See *Michelson v. Kravitz* (1995), 103 Ohio App.3d 301, 659 N.E.2d 359.

"* * *

"That evidence is uncontroverted does not necessarily require the trier of fact to accept an argument advanced by a party. *GTE North, Inc. v. Carr* (1993), 84 Ohio App.3d 776, 618 N.E.2d 249." *Sauto v. Nacht* (Apr. 16, 1998), Cuyahoga App. No. 73118, unreported, 1998 WL 183812, (denial of motion for new trial subsequent to a defense verdict, affirmed where proximate cause and injuries in a minor vehicle collision were decided by the jury); *Schlundt v. Wank* (Apr. 17, 1997), Cuyahoga App. No. 70978, unreported, 1997 WL 186830 (granting of new trial on inadequacy of damages reversed and defense jury verdict reinstated in minor vehicle collision involving soft-tissue injuries).

Finally, with regard to a manifest weight of the evidence review and a jury assessing the credibility and weight of expert testimony, this court stated:

"Finally, we note the jury is not required to give any additional weight to the opinion of an expert, if any weight at all. Rather, an expert's opinion is admissible, as is any other testimony, to aid the trier of fact in arriving at a correct determination of the issues being litigated. Expert testimony is permitted to supplement the decision-making process of the 'fact finder' not to supplant it. See *Ragon[e] v. Vitali & Beltrami, Jr. Inc.* (1975), 42 Ohio St.2d 161 [71 O.O.2d 164], 327 N.E.2d 645. Again, we stress that a jury is considered the primary fact-finder whose determinations must be afforded due deference upon

appellate review." *Doss v. Smith* (June 25, 1998), Cuyahoga App. No. 72672, unreported, 1998 WL 338070.

Reviewing the evidence offered at trial in a light favorable to the verdict, we conclude that the trial court did not abuse its discretion in denying the motion for new trial that was generally premised on alleged inadequacy of compensation for damages. There was competent evidence indicating a very minor collision upon which the jury could conclude that the claimed injuries, which did not immediately manifest themselves, were either wholly manufactured, grossly overstated or not proximately caused by the collision. There was no medical evidence relating to objective findings that documented injury to the plaintiffs as a result of the collision. The only evidence that pointed to any physical injury, apart from the subjective protestations of pain, was physical test results indicating a slight limitation of movement for McCall and Ellis in the form of a positive test result to straight-leg raising (also known as a Lasegue's test ) and a limitation of range of motion in Ellis's lower back movement. These movement limitations, alone, are not conclusive of injury because (1) there was absolutely no evidence of neurological or orthopedic damage or other objective findings of injury, and (2) motion tests themselves are not objective tests, but are entirely premised on subjective findings elicited from responses controlled by the patient. The jury was free to assess the credibility of the witnesses and believe or disbelieve the evidence, in whole or in part.

Appellants' reliance on *Nohejl v. Beam* (Sept. 17, 1998), Cuyahoga App. No. 73335, unreported, 1998 WL 637440, is not persuasive and easily distinguished from the case sub judice. In Noehl, the jury returned a defense verdict in spite of the fact that the parties had stipulated that as a direct and proximate result of defendant's negligence, the plaintiff was injured. This court reversed the denial of a motion for new trial in light of the stipulation of injury, concluding that plaintiff was entitled to at least nominal damages by virtue of the stipulation. In the present case, we are not faced with a stipulation that plaintiffs were injured; the issue of proximate cause and valuation of damages was sent to the fact-finder for resolution.

The remaining cases cited by appellants, *Miller v. Irvin* (1988), 49 Ohio App.3d 96, 550 N.E.2d 501, *Rowland v. Samshall* (1964), 4 Ohio App.2d 349, 33 O.O.2d 401, 212 N.E.2d 624, and *Baum v. Augenstein* (1983), 10 Ohio App.3d 106, 10 OBR 129, 460 N.E.2d 701, are equally inapplicable to the present action. Each of these three authorities involved grossly inadequate damage awards where injuries were objectively and incontrovertibly established. In the present action, the claimed injuries were not incontrovertibly established by the evidence to the satisfaction of the jury. The jury was free to believe or disbelieve any evidence before it, whether contradicted or not, *Mustafa v. Heneghan* (Sept. 4, 1997),

Cuyahoga App. No. 71607, unreported, 1997 WL 547840, at 3, and there was evidence in the record upon which to support the determination of the jury. We decline to intrude on that determination and second-guess it under the facts of this case.

Assignment overruled.

*Judgment affirmed.*

O'DONNELL, P.J., and SPELLACY, J., concur.