OPINION
{¶ 1} Plaintiff-appellant, Marvin Vinar, appeals from the judgment of the Franklin County Court of Common Pleas in favor of defendant-appellee, city of Bexley, and from the denial of appellant's motion for directed verdict, or, in the alternative, a new trial. For the following reasons, we affirm.
 {¶ 2} On July 3, 1997, appellant fell from his bicycle while riding on a roadway going through Jeffrey Park, which is located in the city of Bexley. Appellant fell when his bicycle's front wheel hit an unpainted speed bump stretching across the traffic lane.
 {¶ 3} On February 9, 1999, appellant filed a complaint against the city of Bexley and John Doe seeking recovery for the injuries resulting from his bicycle accident. After a trial, the jury concluded that the speed bump was not a nuisance and, thus, rendered its verdict for appellee. The trial court then entered judgment for appellee on January 8, 2002.
 {¶ 4} During the trial, appellant testified that he bicycled onto the asphalt roadway going through Jeffrey Park from Clifton Avenue. After traveling approximately 75 feet, appellant encountered an asphalt speed bump, which was unmarked and the same color as the roadway. Given the similarity in color, appellant did not see the speed bump, even though he was paying attention.
 {¶ 5} The day after appellant's fall, he returned to Jeffrey Park to photograph the speed bump. Appellant testified that, like the day of the accident, July 4, 1997 was clear and sunny. Appellant also testified that the July 4, 1997 photographs were taken at the same time of the day that his accident occurred. On July 7, 1997, after appellant became aware that appellee had painted the speed bump yellow, appellant again returned to Jeffrey Park to take additional photographs.
 {¶ 6} The trial court admitted eight of appellant's photographs into evidence. The first two photographs depict the entrance to Jeffrey Park from Clifton Avenue. The next two photographs depict the speed bump, as seen from approximately 15 feet away. In one of the photographs, taken on July 4, 1997, the speed bump is unpainted. In the other, taken on July 7, 1997, it is painted yellow. The last four photographs are close-up photographs of the speed bump. In three of these close-up photographs, a ruler is held up to the speed bump to show its dimensions.
 {¶ 7} Based upon his measurements of the speed bump, appellant testified that the bump was approximately three inches high and eight inches wide. Further, appellant testified that the speed bump was like a "vertical block."
 {¶ 8} John Barr, the Parks and Recreation Director for appellee, testified that the speed bump appellant fell over was not painted on July 3, 1997. He acknowledged that both the roadway and the speed bump were black, the color of freshly-laid asphalt. Bruce Hamill, Superintendent of Maintenance for appellee, testified that the speed bump was not painted on July 3, 1997, because it had been newly installed and the asphalt had not finished curing.
 {¶ 9} Finally, Alan Kundtz, an expert in transportation engineering, testified for appellant regarding the characteristics and danger presented by the speed bump. Mr. Kundtz testified the physical characteristics of the speed bump conformed with the general definition of a speed bump, i.e., a bump approximately two to three inches in height placed in the roadway. Mr. Kundtz also testified that speed bumps are usually painted to alert motorists to their presence. If a bicyclist is unaware of a speed bump and, thus, is unprepared for the jolt received going over the bump, there is a chance that the bicyclist will fall over. Therefore, in regard to the unpainted speed bump in Jeffrey Park, Mr. Kundtz opined that it presented a significant hazard to two-wheeled vehicles and that it was a dangerous obstruction in the roadway.
 {¶ 10} After judgment was entered for appellee, appellant filed a motion for directed verdict, or, in the alternative, a new trial. The trial court denied appellant's motion, concluding that the jury was free to disbelieve appellant's expert witness, and that there was sufficient evidence favoring a verdict for appellee. Appellant then appealed to this court.
 {¶ 11} On appeal, appellant assigns the following errors:
 {¶ 12} "[1.] The judgment of the trial court adopting the jury's determination that the City of Bexley did not create and maintain a nuisance that caused injury to Plaintiff is contrary to law.
 {¶ 13} "[2.] The judgment of the trial court adopting the jury's determination that the City of Bexley did not create and maintain a nuisance that caused injury to Plaintiff is against the manifest weight of the evidence.
 {¶ 14} "[3.] The trial court erred in overruling Plaintiff-Appellant's motion for directed verdict at the end of trial.
 {¶ 15} "[4.] The trial court erred in overruling Plaintiff-Appellant's motion for a new trial."
 {¶ 16} Because they are related, we will address appellant's first and third assignments of error together. By appellant's first assignment of error, he argues that the trial court's judgment is contrary to law because the jury could only reach a verdict in appellant's favor based upon the evidence submitted at trial. Similarly, by appellant's third assignment of error, he argues that he is entitled to a directed verdict because "reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to" appellees. Civ.R. 50(A)(4).
 {¶ 17} When presented with a challenge to a denial of a Civ.R. 50(A) motion for directed verdict, we must "discern only whether there exists any evidence of substantive probative value that favors the position of the nonmoving party." Goodyear Tire Rubber Co. v. Aetna Cas. Surety Co., 95 Ohio St.3d 512, 2002-Ohio-2842, at ¶ 3. Although in deciding a motion for a directed verdict it is necessary to review and consider the evidence, such a motion presents a question of law because it requires the court to examine the sufficiency of the evidence, not the conclusions to be drawn from the evidence. Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116, 119. See, also, Malone v. Courtyard by Marriott Ltd., 74 Ohio St.3d 440, 445, 1996-Ohio-311 ("the court is confronted solely with a question of law: Was there sufficient material evidence presented at trial on this issue to create a factual question for the jury?"). The trial court may not weigh the evidence or try the credibility of the witnesses, but, instead, must give the non-moving party the benefit of all reasonable inferences from the evidence. Cummings v. B.F. Goodrich Co. (1993), 86 Ohio App.3d 176,186-187. Since a motion for directed verdict presents a question of law, an appellate court applies the de novo standard of review. Goodyear Tire Rubber Co., supra, at ¶ 4.
 {¶ 18} Pursuant to R.C. 723.01, a municipal corporation, such as appellee, "shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and the municipal corporation shall cause them to be kept open, in repair, and free from nuisance." In determining whether a municipality has breached its duty to keep thoroughfares "free from nuisance," the focus should be on whether "a condition exists within the political subdivision's control that creates a danger for ordinary traffic on the regularly travelled portion of the road." Manufacturer's Natl. Bank of Detroit v. Erie Cty. Road Comm. (1992), 63 Ohio St.3d 318, 322.
 {¶ 19} In the case at bar, there was no dispute that the speed bump was in appellee's control and that it was on the "regularly travelled portion of the road." Thus, the determinative issue presented to the jury was whether the speed bump presented "a danger for ordinary traffic." Appellant asserts that all of the evidence supports the conclusion that the speed bump was a danger. We disagree. Among the items admitted into evidence are six photographs of the speed bump itself. These photographs are open to more than one interpretation of the danger presented by the speed bump and, thus, create a factual question for the jury. Accordingly, we overrule appellant's first and third assignments of error.
 {¶ 20} By appellant's second assignment of error, he argues that the trial court's judgment was against the manifest weight of the evidence because all of the competent, credible evidence admitted supported the conclusion that the speed bump was a nuisance.
 {¶ 21} In reviewing the determination that the speed bump was a nuisance, we are guided by the principle that judgments supported by competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, syllabus. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court." Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81. If the evidence is susceptible to more than one interpretation, we must construe it consistently with the trial court's judgment. Cent. Motors Corp. v. Pepper Pike (1995), 73 Ohio St.3d 581, 584.
 {¶ 22} "[T]he jury alone, as the trier of fact, has the duty to decide what weight should be given to the testimony of any expert witness." Kokitka v. Ford Motor Co., 73 Ohio St.3d 89, 92, 1995-Ohio-84. See, also, Pangle v. Joyce, 76 Ohio St.3d 389, 395, 1996-Ohio-381 ("Once expert testimony was admitted, it was the jury's role to assess the experts' credibility and to assign weight to the experts' testimony and opinions"). Although expert testimony may supplement the jury's decision-making process, it may not supplant the jury's fact-finding role. McCall v. Mareino (2000), 138 Ohio App.3d 794, 799. Thus, a jury generally is free to give as little or as much weight to an expert's testimony as it wishes, and an appellate court must afford the jury's determination due deference.
 {¶ 23} In the case at bar, appellant's expert witness testified that the speed bump was a significant hazard and a dangerous obstruction. The jury's conclusion that the speed bump was not a nuisance indicates that the jury gave little weight to the expert's testimony. Rather, the jury apparently relied upon the photographs admitted into evidence and, using its own knowledge and experience, determined that the speed bump was not a nuisance. Given that Mr. Kundtz acknowledged that the speed bump conformed with the general definition of speed bumps, and speed bumps are in an ordinary person's experience, the jury was able to use its own knowledge and experience to reach its verdict. Although we may have come to a different conclusion regarding the danger posed by the speed bump, we may not reverse a jury's verdict based upon our opinion of the evidence. Seasons Coal Co., supra, at 81. Because the photographs are competent, credible evidence and speed bumps are within an ordinary person's experience, the trial court's judgment is not against the manifest weight of the evidence. Accordingly, we overrule appellant's second assignment of error.
 {¶ 24} By appellant's fourth assignment of error, he argues that he is entitled to a new trial because "the judgment is not sustained by the weight of the evidence." Civ.R. 59(A)(6). The decision to grant a new trial rests within the trial court's discretion, and the trial court's judgment will not be reversed absent an abuse of that discretion. Bobb Forest Products, Inc. v. Morbark Industries, Inc., 151 Ohio App.3d 63,2002-Ohio-5370, at ¶ 65. Because we have already concluded that the trial court's judgment is supported by the manifest weight of the evidence, we now conclude that the trial court did not abuse its discretion by denying appellant's motion for a new trial on weight of the evidence grounds. Accordingly, we overrule appellant's fourth assignment of error.
 {¶ 25} For the foregoing reasons, we overrule appellant's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BRYANT and LAZARUS, JJ., concur.