[Cite as *Williams v. State*, 2013-Ohio-1040.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 98741

---

# IVAN WILLIAMS

PLAINTIFF-APPELLEE

vs.

# STATE OF OHIO

DEFENDANT-APPELLANT

---

## JUDGMENT:
### REVERSED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-679841

**BEFORE:** Celebrezze, P.J., Jones, J., and Keough, J.

**RELEASED AND JOURNALIZED:** March 21, 2013

**ATTORNEYS FOR APPELLANT**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Dale F. Pelsozy
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113


**ATTORNEY FOR APPELLEE**

Ken McDuffie
Ken McDuffie & Associates
5311 Northfield Road
Suite 315
Bedford Heights, Ohio   44146

FRANK D. CELEBREZZE, JR., P.J.:

**{¶1}** Appellant, the state of Ohio, appeals the grant of summary judgment in favor of appellee, Ivan Williams, in an action seeking classification as a wrongfully imprisoned person in order to obtain compensation from the state. The state argues that the trial court could not grant summary judgment in Williams's favor because he did not meet his burden of showing that he was actually innocent of the crimes of which he was convicted. After a thorough review of the record and case law, we reverse the trial court's grant of summary judgment.

## I. Factual and Procedural History

**{¶2}** Appellee was convicted of aggravated robbery following a jury trial. He appealed to this court regarding the denial of his motion to suppress. This court has previously given a recitation of the facts in *State v. Williams*, 172 Ohio App.3d 646, 2007-Ohio-3266, 876 N.E.2d 991, ¶ 2-3 (8th Dist.):

> The victim in this case, Rico Dancy, is [hearing impaired], and on the night in question, was visiting a young woman, who is also [hearing impaired], at her home in Cleveland, Ohio. At the end of the evening, the young woman's mother offered to drive Dancy to a bus stop at East 187th and St. Clair, to await transportation home. They arrived at the bus stop sometime just after midnight. Dancy testified the mother handed him three $100 bills as a birthday present and he put the bills in his left pocket. Dancy had with him a Sidekick II, an electronic device into which he could type and thereby communicate with others. Dancy testified that his back was to the street and he was typing a communication to the young woman previously mentioned, when he felt a gun at the side of his head. Although he was looking out of the corner of his eye, he was able to describe the gun as a black .45 caliber revolver. He testified that the robber reached into his pocket, removed the three $100 bills, walked across the street to a parking lot, got into his car, and drove past him as he left.

Dancy used his Sidekick II to summon the Cleveland police, who promptly arrived at the scene. Dancy testified that he told the police that the robber was dressed all in blue, was approximately 5'8" or 5'9" (his height), had on a blue do-rag, and was driving a blue four-door Lexus with temporary tags. He testified, "[t]hey took my report, and an officer said, if we catch this guy tonight, can we please come and get you. I said, yeah, you can come to my house. I gave them my home address." The police did, in fact, come to Dancy's house some 2-1/2 hours later. They took him to a location where he remained in the police car, and, through the window, viewed a black man at a distance of some 20 feet, a man with a police spotlight focused on him, or under a street lamp, depending upon whose testimony is to be believed. Dancy immediately identified appellant as the robber, and was "100% certain" of this identification. Dancy was never shown the car. No further identification procedures were initiated or pursued.

{¶3} This court, in a split decision, determined that Dancy's eyewitness identification should have been suppressed because of the procedure used and the inconsistencies in the description and testimony of this witness.

{¶4} After remand, the state did not seek to retry Williams. He then filed a complaint for classification as a wrongfully imprisoned person on December 22, 2008. The parties filed cross-motions for summary judgment, and Williams also filed a motion to exclude Dancy's testimony. Williams's summary judgment motion relied on this court's vacation of his conviction and an affidavit from his fiancée that Williams was in her hospital room from 10:00 p.m. until 2:30 a.m. on the night in question. The state responded, disputing the alibi witness's affidavit with the statement Williams made to police that he did not leave his house until 10:40 p.m. Williams's statement goes on to say that he went to his cousin's house for a short time and then went to Euclid Hospital to have his knee examined. He stated he arrived at the hospital between 11:30 p.m. and midnight. He then said he visited his fiancée until approximately 2:30 a.m.

**{¶5}** On December 23, 2010, the trial court granted both of Williams's motions. Regarding summary judgment, the court found that the eyewitness identification was unreliable according to this court's ruling and that Williams had submitted uncontradicted alibi evidence that demonstrated he did not rob Dancy because he was at the hospital.

**{¶6}** The state appeals the trial court's ruling, citing one assignment of error:

> I.   The trial court erred in granting appellee's motion for summary judgment when it held that the vacating of his criminal conviction on appeal could only mean actual innocense or that no crime was committed.

## II. Law and Analysis

**{¶7}** The state of Ohio has waived its general immunity to suit for those wrongfully imprisoned. In order to receive compensation, a two-step process must be undertaken. *Walden v. State*, 47 Ohio St.3d 47, 49-50, 547 N.E.2d 962 (1989). First, a party must petition the common pleas court for a declaration that the individual meets the statutory definition of a wrongfully imprisoned person. R.C. 2305.02. Next, the party must file a claim in the Ohio Court of Claims. R.C. 2743.48(D).

**{¶8}** Here, the trial court found that Williams was a wrongfully imprisoned person through summary judgment.

> Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶9} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988).

{¶10} This court reviews the lower court's granting of summary judgment de novo. *Brown v. Scioto Cty. Commrs.*, 87 Ohio App.3d 704, 622 N.E.2d 1153 (4th Dist.1993). An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul*, 71 Ohio App.3d 46, 50, 593 N.E.2d 24 (8th Dist.1990).

{¶11} Under R.C. 2743.48(A), a wrongfully imprisoned person, as it relates to this case, is defined as an individual found guilty of a felony and sentenced to a prison term whose conviction was vacated or reversed on appeal where the charges or any related charges will not or cannot be brought again, and "the offense of which the petitioner was found guilty was not committed by the petitioner or was not committed at all." *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 72, 1998-Ohio-275, 701 N.E.2d 1002.

{¶12} Those wrongfully imprisoned by the state of Ohio may seek compensation for their ordeal through a mechanism enacted by the state legislature embodied by R.C. 2743.48. However, they carry a heavy burden to show that they were actually innocent or that no crime occurred. R.C. 2743.48(A)(5). They must show that "the charged

offense, including all lesser-included offenses, either was not committed by [them] or was not committed by any person." *Id*. That means a technically deficient conviction reversed on appeal is not a sufficient demonstration of actual innocence. The Ohio Supreme Court has held that

> this standard is not satisfied by an acquittal or a finding of legal insufficiency of the evidence. The General Assembly requires a showing of innocence to be made affirmatively and adjudicated de novo before a claimant can be found to be eligible for compensation in a wrongful-imprisonment action. (Citations omitted.)

*State v. Doss*, __ Ohio St.3d __, 2012-Ohio-5678, ¶ 21. This is because of different standards used in criminal and civil proceedings. In a criminal trial, the state must prove beyond a reasonable doubt that all the elements of a given criminal statute were satisfied while complying with constitutional protections afforded to criminal defendants. But in civil proceedings seeking classification as a wrongfully imprisoned person, those seeking such classification must show actual innocence by a preponderance of the evidence without the benefit of those same constitutional protections. *Id.* at 22. For instance, in criminal proceedings, a violation of a Fourth Amendment right may preclude evidence from being admitted, while a civil proceeding does not have the same prohibition. Generally, rules of evidence and rules of civil procedure govern the introduction of evidence in civil cases.

{¶13} Accordingly, a pretrial motion for exclusion of evidence, or motion in limine, may properly be granted by the trial court in certain circumstances, but those

rulings are preliminary in nature and subject to reconsideration by the trial court at the time such evidence is relevant at trial.

> A ruling on a motion in limine reflects the court's anticipated treatment of an evidentiary issue at trial and, as such, is a tentative, interlocutory, precautionary ruling. Thus, "the trial court is at liberty to change its ruling on the disputed evidence in its actual context at trial. Finality does not attach when the motion is granted."

*State v. French*, 72 Ohio St.3d 446, 450, 1995-Ohio-32, 650 N.E.2d 887, quoting *Defiance v. Kretz*, 60 Ohio St.3d 1, 4, 573 N.E.2d 32 (1991).

{¶14} Here, this court determined that the eyewitness one-on-one "show up" identification of Williams by Dancy was improperly conducted, lacked reliability, and should have been suppressed. Given that suppression, the state had little evidence on which to retry him. However, this suppression does not show that Williams was actually innocent of the crime for which he was found guilty.

{¶15} The Ohio Supreme Court has repeatedly held that reliance solely on a reversed conviction based on insufficient evidence does not carry the burden of demonstrating actual innocence in the context of summary judgment. *See Walden v. State*, 47 Ohio St.3d 47, 49, 547 N.E.2d 962 (1989); *Doss*, 2012-Ohio-5678.

{¶16} The state argues that the trial court relied solely on this court's reversal of Williams's conviction. But the trial court also found that Williams offered uncontroverted alibi evidence. The affidavit provided by his fiancée and attached to his motion for summary judgment indicated Williams was at the hospital visiting his fiancée from 10:00 p.m. until 2:30 a.m. However, this statement was contradicted by the

statement Williams made to police after he was arrested. In that statement, he indicated he left his house at approximately 10:40 p.m. and went to his cousin's house. There he got directions to the hospital. He arrived at the hospital between 11:30 p.m. and midnight to have his knee examined. However, Williams did not receive treatment. Instead, he visited his fiancée until approximately 2:30 a.m.

{¶17} The two statements conflict as to Williams's location at the time of the robbery. The hospital is in close proximity to the location of the robbery. The conflict between the affidavit and Williams's prior statement leaves a question of fact regarding his alibi at the time of the robbery. Examining this evidence in a light most favorable to the state, it cannot be said that Williams has incontrovertibly established an alibi showing he was actually innocent. Several questions of fact remain, including whether Williams was at the hospital at the time of the robbery.

III. Conclusion

{¶18} Here, the question of Williams's alibi at the time of the robbery is in doubt because the statement Williams gave to police shortly after his arrest, which the state attached to its brief in opposition to summary judgment, conflicts with the affidavit Williams attached to his motion. Therefore, summary judgment was inappropriate and a hearing is required.

{¶19} Therefore, the trial court's grant of summary judgment in favor of Williams is reversed.

**{¶20}** This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

LARRY A. JONES, SR., J., and
KATHLEEN ANN KEOUGH, J., CONCUR