[Cite as *Groves v. Ihsanullah*, 2016-Ohio-7703.]

# Court of Appeals of Ohio

EIGHT APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103404**

# KRISTIE GROVES

PLAINTIFF-APPELLANT

vs.

# SAHIBZADAH A. IHSANULLAH, M.D., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-820538

**BEFORE:** Laster Mays, J., Blackmon, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** November 10, 2016

**ATTORNEYS FOR APPELLANT**

Barry T. Doyle
The Doyle Law Firm
23811 Chagrin Boulevard, Suite 227
Beachwood, Ohio 44122

Justin P. Care
Paul W. Flowers
Paul W. Flowers Co. L.P.A.
Terminal Tower, Suite 1910
50 Public Square
Cleveland, Oh   44113

Lawrence F. Peskin
10114 Empyrean Way, Apt. 204
Los Angeles, California 90067


**ATTORNEYS FOR APPELLEES**

Kevin M. Norchi
Norchi Forbes, L.L.C.
23240 Chagrin Boulevard, Suite 210
Cleveland, Ohio 44122

**FOR MARYMOUNT HOSPITAL**

Brian T. Gannon
William A. Meadows
James O'Connor
Reminger Co., L.P.A.
1400 Midland Building
101 Prospect Avenue West
Cleveland, Ohio 44115

ANITA LASTER MAYS, J.:

{¶1} Plaintiff-appellant Kristie Groves ("Groves"), administrator of the estate of her late son, Benjamin Cannon IV ("Cannon"), appeals the jury verdict in favor of defendants-appellees Sahibzadah A. Ihsanullah, M.D. ("Dr. Ihsanullah"), Emergency Care Specialists, Inc., and Marymount Hospital ("Marymount") in this wrongful death and medical malpractice action. We vacate and remand for a new trial.

## I. BACKGROUND AND FACTS

### A. History

{¶2} Cannon, 21 years old, resided with Groves, who holds a degree in social work from Cleveland State University. Groves spoke briefly with Cannon when she returned home from work at about 5:30 p.m. on May 12, 2011. Cannon left the house and appeared at the home of his grandmother, Dorothy Groves ("Dorothy") later that evening.

{¶3} Cannon told Dorothy that he was not feeling well, and that he may have taken too much pain medication that was prescribed for pain management as the result of a prior knee injury. Dorothy had Cannon sit at the table and placed a plate of food before him. When she turned to check on Cannon, his head was tilted back and eyes open. Dorothy contacted Groves who picked Cannon up and took him to the emergency room at

Marymount. Cannon complained on the way to the hospital that his knees hurt. His speech was slurred and he was not making sense.

{¶4} Cannon was triaged by Cynthia Pawlak, R.N. ("Nurse Pawlak"). Groves informed her, and Nurse Pawlak recorded, that she believed Cannon had taken too much pain medication, and Nurse Pawlak noted that on the chart. She also recorded that Cannon's "chief complaint" was "pain in both knees and lower back," and that Cannon previously had arthroscopic surgery on his left knee, and suffered from chronic low back pain.

{¶5} Cannon was lethargic and kept falling asleep, even while talking. Cannon's oxygen saturation level was at 95 percent, while a healthy range is 97 percent to 99 percent. On the five-level triage scale with one being the most urgent, Nurse Pawlak ranked Cannon at level four. Nurse Pawlak also recorded that Cannon's "current medications include Methadone, Methocarbamol, and Vicodin."

{¶6} Dr. Ihsanullah saw Cannon at 10:08 p.m. Dr. Ihsanullah was aware of the family's concern about pain medication. A computer tomographic ("CT") scan was ordered due to Cannon's lethargy, drowsiness, and blood oxygen level, indicating central nervous system depression. The radiology form reflects the study ordered as "CT Brain," the indications as "Alt[ered] St[ate of] Awareness," and under "what are you looking for," the box next to "intracranial bleed" is checked.

{¶7} Dr. Ihsanullah checked on Cannon at 5:00 a.m., prescribed Zofran, and authorized his discharge. Dr. Ihsanullah indicated on the emergency room medical

report that range of motion for Cannon's knee was normal but somewhat painful. Cannon became more alert with the IV fluids and Zofran.

{¶8} The report concluded that:

There is nothing specific wrong with the knee and there are no infection cellulitis or other abnormalities. The mother is also concerned about the fact that he is getting too many medications. I told her that she should discuss this with his doctor because he is already on Methadone, Vicodin, and muscle relaxant. Eventually, he was discharged in good condition to follow with his own regular doctor. No specific other abnormality was found.

The report also indicated, "Impression: Narcotic side effect."

{¶9} Abigael Kaszar, R.N. ("Nurse Kaszar") attended to Cannon until discharge. At discharge, Cannon's oxygen level had declined to 92%. His pain level was recorded as two out of ten. The discharge instructions indicated that the "clinical impression" was "medications side effect." Other instructions stated, "do not use your medications for 12 hours."

{¶10} Groves had to assist Cannon to the car, because he was still tired and sleepy. Groves took him home and then left for work. When Groves returned home, she found Cannon in his bed, eyes closed with foam coming from his mouth. Maple Heights police responded to the 911 call. Groves allowed them to search Cannon's room, his belongings, and the house. The police advised her that Cannon was dead. No pain medications were discovered.

{¶11} The coroner's report stated Cannon suffered dislocated discs in his back and a left knee injury due to a fall at work five to six years before. Cannon was

reportedly taking Azithromycin, Methadone, Hydrocodone, and generic ibuprofen. According to the report, Cannon telephoned Groves at 2:18 p.m. but Groves did not answer. Groves arrived home at approximately 5:38 p.m. and found Cannon in his room, face up in bed and unresponsive. The cause of death was acute bronchial pneumonia caused by acute intoxication by Methadone.

{¶12} On July 21, 2012, Groves filed a survivorship action for medical malpractice, and wrongful death. The suit was dismissed pursuant to Civ.R. 41(A), and refiled February 11, 2014. Generally, Groves asserted that appellees failed to properly diagnose and treat Cannon for the Methadone overdose, and should have followed the standard protocol of retaining Cannon for monitoring for 24 hours. Appellees' position was that Cannon ingested additional Methadone after leaving the hospital, though no evidence of Methadone had been located by the police the day of Cannon's death.

### 1. Relevant Motions in Limine

{¶13} Groves filed two key evidentiary motions during discovery and pretrial activities.

### a. Prior Emergency Room Visits

{¶14} The first motion was to exclude all evidence concerning Cannon's estimated 15 visits to local emergency rooms between 2008 and 2011, assertedly for treatment due to physical injuries. Groves argued that the visits were not relevant to the malpractice claims per Evid.R. 402, because the providers who attended Cannon at Marymount did not know the details of those visits. Specifically, Groves asked that

appellees be barred from "offering or presenting any and all evidence that reference in any way to plaintiff decedent's, Ben Cannon IV, prior emergency department encounters."

{¶15} Appellees countered that the evidence was admissible to demonstrate Cannon's history of knee and back pain and treatment with narcotics and Methadone. Groves rejected their position and opined that the strategy was, instead, to support their case by painting Cannon as a drug abuser. By judgment entry issued February 5, 2016, the trial judge granted the motion "to exclude all evidence concerning decedent's prior emergency department encounters." ("ER Limine.")

### b. Testimony of William Lee Hearn, Ph.D.

{¶16} William Lee Hearn, Ph.D. ("Hearn"), a forensic toxicologist, provided an opinion during deposition testimony that Cannon was exhibiting "drug seeking" behavior. Groves motioned the court to limit Hearn's testimony to exclude the drug-seeking-behavior testimony on the grounds that: (1) the opinion was unsupported by evidence, and (2) the subject was outside of his field of expertise ("Hearn Limine.") Hearn made the statement in spite of the fact that a defense emergency room expert, Dr. Arthur M. Pancioli ("Dr. Pancioli") testified during deposition that there was no evidence in the Marymount emergency room records reflecting that Cannon was a drug abuser, only that he had taken too much of his prescribed medication.

{¶17} Appellees asserted that Hearn should be allowed to testify on the drug abuse issue if Groves's counsel questioned Hearn about Cannon's possible motivation for

taking additional Methadone. By judgment entry issued on February 6, 2015, the trial court granted the motion to limit Hearn's testimony "regarding substance and drug abuse opinions."

### 2. The Trial

{¶18} On March 20, 2014, trial was scheduled to begin on February 9, 2015. Interim motions to continue the trial date were rejected.

{¶19} On February 11, 2015, a judgment entry was issued providing that, due to the unavailability of the original trial judge, the case was transferred to a visiting judge. The case was also called for trial on that date.

{¶20} After an 11-day trial, the jury issued a unanimous verdict in favor of appellees. Groves motion for a new trial pursuant to Civ.R. 59(A) was grounded on: (1) irregularities during the proceeding regarding the liminal motions and sanctions (Civ.R. 59(A)(1)); (2) the verdict was against the weight of the evidence (Civ.R. 59(A)(6)); and (3) an error of law occurring at the trial and brought to the attention of the trial court by the party making application (Civ.R. 59(A)(9)). Groves also argued the general premise that the judge had the discretion to grant a new trial for good cause shown (Civ.R. 59).

{¶21} Groves appealed the trial court's denial of the Civ.R. 59 motion. Trial proceedings relevant to Groves's assignments of error are delineated thereunder.

## II.    STANDARD OF REVIEW

**{¶22}** We apply an abuse of discretion standard to our review of the denial of a Civ.R. 59 motion for a new trial. *Shaw Steel, Inc. v. Ronfeldt Mfg., L.L.C.*, 8th Dist. Cuyahoga No. 102665, 2016-Ohio-1117, ¶ 36, citing *McCall v. Mareino*, 138 Ohio App.3d 794, 798, 742 N.E.2d 668 (8th Dist.2000). The determination of the necessity for a new trial lies within the sound discretion of the trial court, and the court's finding will not be reversed without a showing that the trial court's findings constituted an abuse of discretion because the decision was "arbitrary, unreasonable, or unconscionable." *Id.*; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

## III.   ASSIGNMENTS OF ERROR

**{¶23}** Groves present two assignments of error warranting a new trial: (1) the trial judge unjustifiably admonished and sanctioned Groves's counsel after specifically permitting the allegedly improper questioning relating to the subject matter of the liminal motions; and (2) the verdict was against the manifest weight of the evidence. We find that Groves's first asserted error is determinative here.

    **A**.   **Assignment of Error No. 1:  a new trial is warranted because the trial judge unjustifiably admonished and sanctioned plaintiff-appellant's counsel after specifically permitting the supposedly improper questioning.**

        **1.**    **Motions in Limine Sanction**

**{¶24}** Groves first attacks the issue of procedural irregularity under Civ.R. 59(A)(1), which provides:

> (A) Grounds.   A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

(1)  Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial[.]

**{¶25}** During cross-examination towards the end of the trial, and assertedly in an attempt to discredit Hearn's testimony based on bias toward the decedent, Groves's counsel asked Hearn what assumptions he relied on in forming his opinions. Specifically, inquiry was made as to whether Hearn "assumed that this young man had a history of drug seekin[g.]"  (Tr. 1359.)  The visiting judge overruled defense objections based on the limine rulings, and allowed the questioning.

**{¶26}**  Counsel then continued the line of questioning, seeking confirmation by Hearn that his drug seeking conclusion was not based on the Marymount emergency room records, because that information was not noted in the records.  Groves posited that the absence of that information in the records not only evidenced a bias by Hearn, it supported a standard of care violation.

**{¶27}** Hearn responded that he reviewed Kaiser Permanente emergency room records reflecting repeated requests by Cannon for narcotic prescription refills, and that information served as the foundation for Hearn's assumption that Cannon abused drugs. Hearn also acknowledged that, if Cannon had been confined for 24-hour observation, required where a patient exhibits clinical symptoms of overdose, his death would not have occurred.

**{¶28}** Appellees vigorously objected, claiming that the emergency room and Hearn's motions in limine had been violated. Appellees claimed that they suffered prejudice, because they were unable to present a comprehensive defense because they were constricted by the evidentiary limitation rulings. Groves responded that, not only could appellees have challenged the pretrial rulings at trial, there was no bar to the introduction by appellees of other evidence fully available. Groves also noted for the trial court that, in responding to the pretrial motions in limine, appellees failed to introduce any of the evidence that they were now claiming they would have submitted, but for the liminal rulings.

**{¶29}** Ultimately, appellees' counsel sought a mistrial based on the asserted prejudice. In spite of the trial court's prior rulings allowing the evidence, and noting that the trial was almost over, the trial court elected to issue a curative instruction effectively sanctioning Groves's counsel for violating the in limine rulings, and charged defense counsel with the task of preparing a curative instruction.

**{¶30}** Prior to closing arguments, the trial court informed the jury:

Now, before the opening arguments or statements of counsel, the court has a special instruction to give you before you hear the closing arguments. And the special instruction is as follows: *Plaintiff's attorney violated an order of the court regarding certain evidence. And as a result of that violation,* the court instructs you that you may infer that Mr. Cannon's medical records from before May 12, 2011 may have been adverse to plaintiffs and may have revealed that Mr. Cannon was a drug seeker.

(Emphasis added.) (Tr. 1797 and 98.) During closing arguments, counsel for appellees urged the jurors to infer that the evidentiary violations by Groves's counsel was for purposes of evidentiary manipulation.

{¶31} Groves claims prejudice by the sanctions and the accusations by defense counsel, arguing that it negatively impacted the perspective of the jury and the credibility of her case, depriving Groves of a fair trial. Groves states that the strategy was not improper, illegal, or unethical. We agree.

{¶32} Groves offers that, pursuant to *State v. French,* 72 Ohio St.3d 446, 650 N.E.2d 887 (1995), the motions precluded Hearn from volunteering the information, but did not prohibit the attorneys from inquiring during trial because the liminal orders were not final:

> A "motion in limine" is defined as "[a] pretrial motion requesting [the] court to prohibit opposing counsel from referring to or offering evidence on matters so highly prejudicial to [the] moving party that curative instructions cannot prevent [a] predispositional effect on [the] jury." *Black's Law Dictionary* 1013 (6th Ed.1990). The purpose of a motion in limine "is to avoid injection into [the] trial of matters which are irrelevant, inadmissible and prejudicial[,] and granting of [the] motion is not a ruling on evidence and, where properly drawn, granting of [the] motion cannot be error." *Id.* at 1013-1014. *See State v. Maurer*, 15 Ohio St.3d 239, 259, 473 N.E.2d 768, 787 (1984).
>
> A ruling on a motion in limine reflects the court's anticipated treatment of an evidentiary issue at trial and, as such, is a tentative, interlocutory, precautionary ruling. Thus, "the trial court is at liberty to change its ruling on the disputed evidence in its actual context at trial. Finality does not attach when the motion is granted." *Defiance v. Kretz*, 60 Ohio St.3d 1, 4, 573 N.E.2d 32, 35, (1991); citing *State v. Grubb*, 28 Ohio St.3d 199, 201-202, 503 N.E.2d 142, 145 (1986).

*Id.* at 450-451.

**{¶33}** Thus, Groves argues that the propriety of the pretrial in limine ruling surfaces when the situation arises at trial. Further, the ruling is not violated once the trial court overrules the opposing party's objections, and allows the evidence as it did in this case. *Id.*

**{¶34}** We have previously held that a pretrial liminal motion is preliminary, and it is "subject to reconsideration by the trial court at the time such evidence is relevant at trial." *Williams v. State*, 8th Dist. Cuyahoga No. 98741, 2013-Ohio-1040, ¶ 13, citing *French*, *supra*. Appellees' cite of our holding in *Quellos v. Quellos*, 96 Ohio App.3d 31, 643 N.E.2d 1173 (8th Dist.1994), is not determinative here. In that dog-bite case, during opening arguments, the appellees referenced appellant's conduct around dogs, evidence that had been excluded by pretrial order. *Id.* at 43. The trial court issued a curative instruction that the jury was to disregard the statement. *Id.*

**{¶35}** The jury entered a verdict for the appellees. On appeal, we rejected Groves's arguments that evidentiary liminal violations constituted reversible error. However, we did reverse and remand on the ground that the verdict was against the manifest weight of the evidence. Our cautionary statement to appellees regarding compliance with the trial court's orders on remand, *id.* at 42, was dicta and did not constitute this court's position on the preliminary nature of pretrial motions.

**{¶36}** A pretrial liminal ruling is interlocutory, and remains so until the unsuccessful party challenges the ruling during trial. At that point, the trial judge may

reassess the propriety of its initial holding in light of the current circumstances of the case.

> "[I]t is only a preliminary interlocutory order precluding questions being asked in a certain area until the court can determine from the total circumstances of the case whether the evidence would be admissible. When sustained, losing counsel should make a proffer of the otherwise excluded evidence at the proper time during the trial and have a second determination or hearing by the court as to its admissibility."

*State v. Maurer*, 15 Ohio St.3d 239, 259, 473 N.E.2d 768, 787 (1984), fn. 14, quoting Palmer, Ohio Rules of Evidence 446, Rules Manual (1984).

**{¶37}** This court discussed the preliminary nature of motions in limine in *Vespoli v. Encompass Ins. Co.*, 8th Dist. Cuyahoga No. 94305, 2010-Ohio-5359. Vespoli argued the trial court erred in granting the motion in limine filed by his insurer, appellee Encompass Insurance Co., to exclude all evidence relating to his shoulder injury. *Id*. at ¶ 1. Encompass sought to limit the evidence based on inadequacies in Vespoli's expert's opinion. The trial court granted the motion. *Id*. at ¶ 5.

**{¶38}** A visiting judge was assigned to the case and a bench trial ensued. Vespoli proffered evidence of the shoulder injury in light of the pretrial motion in limine. *Id*. at ¶ 10. After a brief discussion regarding the adequacy of the expert testimony, the trial court refused to admit the evidence based on the notion that he was bound by the prior judge's ruling. We first observed that:

> "[A] proponent who has been temporarily restricted from introducing evidence by virtue of a motion in limine, must seek the introduction of the evidence by proffer or otherwise at trial in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal." *Collins v. Storer Communications, Inc.*,

65 Ohio App.3d 443, 584 N.E.2d 766 (1989); *State v. Grubb*, 28 Ohio St.3d 199, 503 N.E.2d 142 (1986).

*Vespoli* at ¶ 14.

**{¶39}** We then explained that the proffer properly presented the opportunity for the trial court to rule on the preliminary order in the context of the proceedings. However, "instead of exercising its independent discretion, the trial court declined to admit the evidence solely upon its mistaken believe that it was 'bound' by the prior ruling." *Id*. at ¶ 17. We reversed and remanded the case for a new trial. *Id*.

**{¶40}** In the instant case, appellees, the unsuccessful parties on the pretrial motions, did not challenge the pretrial rulings that they argue impeded their ability to present their case. In fact, the record reflects that, during questioning of Groves earlier in the case, appellee Marymount inquired about the prior emergency room visits, without proffer, regarding the ER Limine:

> [Marymount counsel]: The Kaiser records — and I believe counsel has indicated that they're going to introduce the Kaiser records into evidence — shows some over 20 visits that Ben had to either emergency rooms or urgent cares in a three-year time —

(Tr. 1232.) Groves objected, a side bar ensued. Questioning proceeded regarding whether Groves was present during Cannon's visits to Kaiser over the prior three years, then moved on to the night of the emergency room visit.

**{¶41}** Groves's questioning of Hearn, after the emergency room exchange during Groves's cross-examination, triggered the objections by appellees regarding Groves's

violation of the pretrial orders. The trial court overruled the objections three times, and allowed questioning to proceed.

{¶42} Appellees successfully argued to the trial court, and repeatedly state in their briefs, that they refrained from introducing the liminal evidence, impeding their defense, based on the pretrial rulings. Thus, they insist that a trial court's sanction was required. We find; however, that in light of the preliminary nature of the pretrial orders, Groves was not responsible for the legal strategy of appellees. Appellees, in fact, brought up the liminal evidence during questioning of Groves, and later complained of the acts of Groves, leading to the sanction.

{¶43} The curative instruction was, at the trial court's direction, prepared by counsel for appellees. The trial court, reciting the instruction to the jury immediately before closing arguments, specifically stated that the "*Plaintiff's attorney violated an order of the Court regarding certain evidence.*" (Emphasis added.) That directive is; however, incorrect, because the trial court was not bound by the prior court orders. *Vespoli*, 8th Dist. Cuyahoga No. 94305, 2010-Ohio-5359, ¶ 17. The stated penalty for counsel's alleged misconduct was a directive from the trial court that, "the court instructs you that you may infer that Mr. Cannon's medical records from before May 12, 2011 may have been adverse to plaintiffs and may have revealed that Mr. Cannon was a drug seeker."

{¶44} In light of our findings, we reject appellees' argument that the invited error doctrine applies in this case. *Rhodes v. Rhodes Indus., Inc.,* 71 Ohio App.3d 797, 806,

595 N.E.2d 441 (8th Dist.1991).  The record does not support a claim that Groves is seeking to take advantage of an error that Groves invited or caused.  *Id.*

## IV.  CONCLUSION

**{¶45}**  We determine that, based on the record and applicable case law, the conduct of Groves's counsel was not illegal or unethical, nor did it impede appellees from challenging the motions at any point during the proceedings as case law provides.  *See, e.g., Vespoli, supra.*  As a result, the "curative instruction" served to inform the jury that Groves's counsel violated the trial court order regarding evidence, possibly to cover up Cannon's drug-seeking activity, supporting appellees' position in the case.

**{¶46}** Therefore, we find that the trial court abused its discretion in denying Groves's motion for a new trial pursuant to Civ.R. 59(A)(1) and (9).  Our findings on the first assignment of error make the remaining error moot. Accordingly, the verdict is vacated and the case is remanded for a new trial.

**{¶47}** This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry out this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

PATRICIA ANN BLACKMON, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR