[Cite as *Shaw Steel, Inc. v. Ronfeldt Mfg., L.L.C.*, 2016-Ohio-1117.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 102665

---

### SHAW STEEL, INC.

#### PLAINTIFF-APPELLANT

vs.

### RONFELDT MANUFACTURING, L.L.C.

#### DEFENDANT-APPELLEE

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-802306

**BEFORE:** Laster Mays, J., Jones, A.J., and Celebrezze, P.J.

**RELEASED AND JOURNALIZED:** March 17, 2016

**ATTORNEYS FOR APPELLANT**

Donald N. Jaffe
Shawn W. Maestle
Weston Hurd, L.L.P.
Tower at Erieview
1301 East 9th Street,    Suite 1900
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Peter A. Dewhirst
Larry E. Yunker
Lyden, Chappell & Dewhirst, Ltd.
5565 Airport Highway, Suite 101
Toledo, Ohio 43615

Jonathan M. Hanna
Lyden, Chappell & Dewhirst, Ltd.
5470 Main Street, Suite 300
Sylvania, Ohio 43560

ANITA LASTER MAYS, J.:

{¶1} Plaintiff-appellant Shaw Steel, Inc. ("Shaw") challenges the trial court's judgment awarding damages to Shaw in the sum of $68,500.37, in its complaint on account for unpaid invoices against defendant-appellee Ronfeldt Manufacturing, L.L.C. ("Ronfeldt"), and awarding $83,695.24 to Ronfeldt on its counterclaims for breach of contract and breach of warranties. The net effect of the damages award is a final judgment of $15,194.87 against Shaw. After a thorough review of the record, we affirm the trial court's decision.

I.      BACKGROUND AND FACTS

{¶2}    Shaw is a metal supplier who has provided speciality steel products to Ronfeldt, a steel parts fabricator, for 15 years. Ronfeldt issued purchase orders 15523 dated April 17, 2012, 15677 dated June 13, 2012, and 15769 dated July 16, 2012 ("Orders") to Shaw. The Orders contained quality specifications, grade specifications, chemical properties, and mechanical properties required for the steel.

{¶3} The steel was purchased to manufacture high pressure filter assemblies for Ronfeldt customers Pall, Inc. ("Pall") and Donaldson, Inc. ("Donaldson"). Shaw provided certifications with the shipments that the steel complied with specifications.

{¶4} On October 11, 2012, Donaldson expressed concerns to Ronfeldt about whether the steel met the required specifications. On October 12, 2012, Ronfeldt asked that Shaw provide verification of compliance with the yield and strength test results. While awaiting a response from Shaw, Ronfeldt had a sample tested by Veltec Laboratories ("Veltec"). Ronfeldt received the results on October 17, 2012 that confirmed the steel did not meet specifications. Ronfeldt immediately notified Shaw and forwarded a sample of the steel.

{¶5} Shaw had the sample tested by Steel Testing Laboratory and the test results were dated October 24, 2012. On November 1, 2012, Shaw informed Ronfeldt that its laboratory test confirmed the noncompliance findings as evidenced by Shaw's November 1, 2012 corrective action report. (Def. exhibit No. 14.)

{¶6} Donaldson elected to accept all products manufactured with the steel. Pall accepted the parts that it had already incorporated into products and sold. Pall rejected and charged back the nonconforming goods, 6,727 units, on November 20, 2012. (Def. exhibit Nos. 12n, 12r, 20.)

{¶7} On November 15, 2012, Ronfeldt notified Shaw that it required conforming steel to remanufacture the Pall parts, but Shaw indicated that it could not locate replacement steel (Def. exhibit No. 25, Testimony of Troy Williams). On November 20, 2012, Ronfeldt issued its final material rejection report. (Def. exhibit No. 16.) The cost to remanufacture the parts was $85,500.17 ($12.71 per unit for 6,727 units), $1,343.31 for return shipping of the rejected products, with a scrap credit of $3,148.24, resulting in a net amount of $83,695.24. There were no lost sales as a result.

{¶8} Shaw and Ronfeldt engaged in several unrelated transactions until February 2013 for the sum of $68,500.37 (the "2013 Invoices" and "2013 Purchase Orders"). The invoices for the noncompliant steel were still outstanding. On February 11, 2013, Shaw refused to fill pending purchase orders until Ronfeldt paid back invoices. (Def. exhibit No. 18.)

{¶9} On February 25, 2013, Ronfeldt filed suit for breach of contract and warranties in the Lucas County Court of Common Pleas. On February 28, 2013, Shaw filed suit against Ronfeldt for the unpaid 2013 Invoices in the Cuyahoga County Court of Common Pleas. Ultimately, the parties agreed to proceed in Cuyahoga County where Ronfeldt filed a

counterclaim for damages related to the 6,727 rejected parts. A bench trial ensued. The trial court granted Shaw's uncontested motion for a directed verdict on the 2013 Invoices, resulting in a judgment of $68,500.37.

{¶10} The trial court proceeded to entertain Ronfeldt's counterclaim for the remanufacturing costs, plus return shipping, less scrap, totaling $83,695.24. Shaw denied liability for 40 percent of the claimed damages arguing that, when Donaldson contacted Ronfeldt regarding possible noncompliance of the steel on October 11, 2012, Ronfeldt was on notice that the steel may not be conforming. On October 17, 2012, Shaw argued that Ronfeldt had actual knowledge that the steel was nonconforming because it had received the Veltec lab results.

{¶11} As a result, Shaw posited that, as of the October 10 to October 17, 2012 time period, only 4,104 units of the 6,727 noncompliant units had been manufactured and delivered. (Tr. 198, 298.) Therefore, Ronfeldt knowingly manufactured and delivered 2,623 defective parts to Pall on October 26 and October 29, 2012. Ronfeldt's acts constituted an intervening cause to Shaw's negligence so that Ronfeldt was not entitled to consequential damages for the 2,623 parts (at $12.71 per part, $33,338.33).

{¶12} Ronfeldt explained at trial that the steel was placed through a 12- step process prior to final fabrication for shipment to Ronfeldt's customers. The process consisted of: (1) outblank; (2) wash and wax; (3) first draw; (4) second draw; (5) anneal; (6) wax; (7) third draw; (8) final draw; (9) edge off and trim; (10) flare; (11) lathe; and (12) wash, oil, and pack. (Def. exhibit No. 17.)

{¶13} A portion of the processing was conducted by third party vendors. Under expedited conditions, the process took at least three weeks to complete. (Def. exhibit No. 12L; tr. 156-157.) Product batches were released by Ronfeldt upon completion to Donaldson and Pall.

Shipments to Pall took place on June 5, 28, 29; September 14, October 26, and October 29, 2012. (Joint exhibit No. 1.)

{¶14} Ronfeldt rejected Shaw's assertion that it began the three week, 12-step process after it received notice of a possible issue in October 2012. Ronfeldt did state that it sought confirmation from Shaw before notifying Donaldson and Pall of the noncompliance. On November 1, 2012, Ronfeldt contacted Shaw to inquire about the status of its testing. Shaw confirmed that the steel did not meet specifications. Ronfeldt then notified Donaldson and Pall of the noncompliance. As a result, Ronfeldt states it acted reasonably. Ronfeldt also offered that there was no evidence that Ronfeldt's damages would not have been even greater if processing was frozen in October 2012.

### A. Trial Court's Initial Findings of Fact and Conclusions of Law

#### 1. 2013 Invoices

{¶15} The parties submitted proposed findings of fact and conclusions of law. The trial court issued its original findings of fact and conclusions of law on November 20, 2014. The court awarded $68,500.37 to Shaw plus prejudgment interest at the rate of two percent, per month from March 1, 2013, until the date of judgment and post-judgment interest at the rate of three percent, per annum.

{¶16} The court found that Shaw continued to accept new orders for steel until January 30, 2013. Shaw generated corresponding 2013 Invoices totaling $34,425.27 and delivered approximately 50% of the steel covered by the first of the 2013 Orders, an amount that is included in the $68,500.37 balance.

{¶17} On February 11, 2013, Shaw informed Ronfeldt that the remaining shipments had been placed on a credit hold. A portion of the steel being retained was sold to third parties in July and August 2013.

{¶18} The trial court held that pursuant to R.C. 1302.09(A)(2), each purchase order and invoice constituted a separate contract. As a result, Shaw was not permitted to withhold delivery under the 2013 Invoices due to Ronfeldt's failure to pay the invoices for the rejected Steel. The trial court also concluded that Shaw was barred from recovery by the terms and conditions of the 2013 Orders. Those terms provided that Ronfeldt was entitled to deduction or setoff against any claims by a seller against Ronfeldt for money due arising from the current or any other transactions between Ronfeldt and a seller.

{¶19} In reaching a determination on the breach of contract, express and implied warranties claims, the trial court was guided by a prior case involving Shaw, *Shaw Steel v. NADACO Steel*, 8th Dist. Cuyahoga No. 70272, 1996 Ohio App. LEXIS 5320 (Nov. 27, 1996). The trial court observed that, while the case involved revocation of acceptance of nonconforming steel, the facts were analogous and provided guidance as to what is customary in the industry regarding a customer's inspection of steel and timeliness of notice of defect that could take up to two years. *Id.* at * 11.

{¶20} Finding that the notice of noncompliance was timely and that Shaw breached the contracts and warranties, the court addressed damages. Guided by R.C. 1302.88, the trial court found that Pall charged back $137,903.50 for the nonconforming goods and Ronfeldt bore return shipping costs of $1,343.31. Ronfeldt purchased conforming steel from another manufacturer and provided the substitute goods. Ronfeldt did not suffer lost sales, however, it was entitled to recover its costs to remanufacture the 6,727 units, plus return shipping, less scrap, for a total of

$83,695.24. Ronfeldt was also granted post-judgment interest in the amount of three percent per annum.

**B.    Shaw's Civ.R. 59(A) Motion; Request for Amended Findings of Fact and Conclusions of Law**

{¶21}    Shaw filed a motion under Civ.R. 59(A) on November 24, 2014. The motion asked the trial court to "open the Court's Judgment of November 20, 2014 as to Defendant's Counterclaim to amend its Findings of Fact and Conclusions of Law ["Findings"] or make new findings and conclusions and enter a new judgment."[1]    The motion is not based on any of the enumerated grounds under Civ.R. 59(A) but cites the section of the rule regarding the court's authority where a bench trial was held.

{¶22}    Shaw again argued that the trial court misconstrued the evidence in calculating Ronfeldt's damages on the counterclaim and that Ronfeldt had a duty to discontinue use of the nonconforming steel in October 2012 pursuant to R.C. 1302.65(C)(1).[2]    As a result, Ronfeldt was not entitled to recovery for the 2,623 parts manufactured after acquiring knowledge of noncompliance.

{¶23}    Shaw also asserted, (1) that the scrap metal credit should be increased to $4,815.92 due to a discrepancy in Ronfeldt's internal documents, and (2) that evidence of a mechanical testing failure was based on testing by Pall that was not in evidence, so the court should not assume that the failure was Shaw's fault because proximate cause was lacking.    In its conclusion, Shaw requested that the trial court: (1) amend Section 46 of the Findings to reflect that 2,623 parts were manufactured, and shipped with Ronfeldt's actual knowledge of

---

[1]  The parties dispute the true nature of the motion and, as a result, the appropriate standard of review.

[2]  That section provides that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy * * *."

nonconformity; (2) amend Section 49 to increase the scrap credit to $4,815.92, and (3) amend Section 50 to a total damages amount awarded to Ronfeldt of $48,689.56.

**{¶24}** Ronfeldt defended that, in addition to the required fabrication period, by the time Ronfeldt learned that the steel did not conform to specifications, the steel was only useful as scrap and could not be resold as raw steel. Ronfeldt also filed a motion to amend the court's findings on the grounds that the prejudgment interest award was improperly calculated by the trial court.

### C.    Amended Findings and Denial of Civ.R. 59 Motion

**{¶25}** On February 3, 2015, the trial court denied Shaw's Civ.R. 59 motion without opinion. The trial court did, however, issue amended findings of fact and conclusions of law ("Amended Findings").

**{¶26}** Shaw's award remained at $68,500.07 and the award to Ronfeldt remained at $83,695.24. However, the trial court determined that the damage awards must be offset prior to calculating prejudgment interest on the difference. The overall (i.e., net) judgment award was for Ronfeldt in the amount of $15,194.87.

**{¶27}** Ronfeldt was not entitled to prejudgment interest because its debt was not liquidated. Shaw was not entitled to prejudgment interest because the claim for setoff by Ronfeldt predated the date of the earliest invoice upon which the $68,500.37 was awarded. Finally, Ronfeldt was entitled to post-judgment interest in the amount of three percent per annum.

**{¶28}** Shaw appealed. This court affirms the findings of the trial court.

## II.  ASSIGNMENTS OF ERROR

**{¶29}**  Shaw presents two assigned errors:

I.   The trial court's damage calculation is legally insufficient since the court awarded damages for production costs incurred after Ronfeldt was fully aware of the steel's nonconformity and insufficient characteristics.  Therefore, the trial court erred in failing to grant Shaw's Rule 59 motion for judgment notwithstanding the verdict.

II.   The trial court's judgments are against the manifest weight of the evidence as appellee Ronfeldt proximately caused forty percent of its claimed and awarded damages.

## III.  LAW AND ANALYSIS

**{¶30}**  We combine Shaw's assignments of error for efficiency and ease of review.

### A.  Standards of Review

#### 1.  Manifest Weight

**{¶31}**  A judgment in a civil case that is "supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as against the manifest weight of the evidence."  *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.  The resolution of conflicts in evidence and the credibility of the witnesses and resolutions of conflicts in evidence are matters for the trier of facts.  "Therefore, a reviewing court should not reverse a trial court's decision if it merely has a difference of opinion on questions of credibility or the weight of the evidence; rather, a trial court's decision should be overturned only when there is no competent and credible evidence to support that decision."  *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

**{¶32}**  We further observe that there is a presumption in a bench trial that the trial court considered only evidence that was reliable, relevant and competent in rendering its decision

unless it affirmatively appears to the contrary. *Sonis v. Rasner*, 2015-Ohio-3028, 39 N.E.3d 871, ¶ 70 (8th Dist.), citing *State v. Pleban,* 9th Dist. Lorain No. 10CA009789, 2011-Ohio-3254, ¶ 45. ("There is a presumption in a bench trial that the trial judge knows and follows the law, and only considers matter properly before it.").

### 2.    Civ.R. 59(A); Sufficiency of the Evidence

**{¶33}**   The parties disagree on the standard of review applicable to Shaw's first assigned error. The motion filed with the trial court was entitled a motion for a new trial pursuant to Civ.R. 59(A) which, on appeal, is generally reviewed under an abuse of discretion standard.

**{¶34}**    Shaw stated in the initial appellate brief that its Civ.R. 59 motion was for judgment notwithstanding the verdict, which involved questions of law and is thus entitled to de novo review. However, judgments notwithstanding the verdict are governed by Civ.R. 50 and the rule does not apply "in cases tried to the bench where no jury verdict is rendered." *Morgan v. Ohio State Univ. College of Dentistry*, 10th Dist. Franklin No. 13AP-287, 2014-Ohio-1846, ¶ 72, citing *Freeman v. Wilkinson,* 65 Ohio St.3d 307, 309, 603 N.E.2d 993 (1992).

**{¶35}**   Shaw subsequently argued in its reply brief that it erroneously characterized the relief it was seeking by its Civ.R. 59(A) motion in its initial brief, but maintained that it is still entitled to de novo review because the Civ.R. 59 motion was actually a challenge to the legal sufficiency of the evidence, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517; *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997); *Black's Law Dictionary* 1433 (6th Ed. 1990).

**{¶36}**   An appeal of a denial of a Civ.R. 59 motion is subject to an abuse of discretion standard. *McCall v. Mareino*, 138 Ohio App.3d 794, 798, 742 N.E.2d 668 (8th Dist.2000).

"The decision lies within the sound discretion of the trial court and shall not be reversed absent a showing that its decision was unreasonable, arbitrary, or unconscionable." *Id.; Dzina v. Dzina,* 8th Dist. Cuyahoga No. 83148, 2004-Ohio-4497, ¶ 76. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." (Citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶37} Shaw grounded its motion on the following portion of Civ.R. 59:

Civ.R. 59(A) states in pertinent part: "On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and enter a new judgment."

Shaw's Civ.R. 59 Motion at p. 4.

{¶38} The cited portion of Civ.R. 59 is not one of the enumerated grounds for a motion under Civ.R. 59(A):

[A] careful reading of the rule reveals that the paragraph about bench trials is not part of subsection (9). Immediately following subsection (9), the rule states, "In addition to the above mentioned grounds * * * . Civ.R. 59.*" The paragraph * * * is not a separate reason to grant a new trial*. The clear language of the rule shows that the paragraph was merely intended to provide the court with remedial options upon granting a new trial if the original trial was to the court. For these reasons, we cannot find that the trial court abused its discretion in overruling [appellant's] motion for new trial.

(Emphasis added.) *Marysville Newspapers, Inc. v. Delaware Gazette Co.*, 3d Dist. Union No. 14-06-34, 2007-Ohio-4365, ¶ 59.

{¶39} Shaw does not address in its trial court motion, or in its briefs before this court, what portion of Civ.R. 59(A) applies. Instead, Shaw reiterates the argument challenging the trial court's determination as to the amount of damages. "The purpose of Civ.R. 59 is not to simply allow a party a second opportunity to present evidence that should have been presented at the first trial." *Riesbeck v. Indus. Paint & Strip,* 7th Dist. Monroe No. 08 MO 11, 2009-Ohio-6250, ¶ 16.

**{¶40}** This court further notes:

"[I]t is not the function of this court to construct a foundation for [an appellant's] claims * * *." *Kremer v. Cox*, 114 Ohio App.3d 41, 60, 682 N.E.2d 1006 (1996). Moreover, it is not the duty of this court to develop an argument in support of an assignment of error if one exists. *Cardone v. Cardone*, 9th Dist. Summit Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028, at *22 (May 6, 1998).

*Hutchins v. FedEx Ground Package Sys., Inc.*, 9th Dist. Summit No. 22852, 2006-Ohio-253, ¶ 6.

**{¶41}** In contrast to the abuse of discretion standard, in reviewing a sufficiency of the evidence argument in a civil case, we consider:

whether, after viewing the evidence in a light most favorable to the prevailing party, the judgment is supported by competent, credible evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978). Put more simply, the standard is "whether the verdict [is] one which could be reasonably reached from the evidence." *Hartford Cas. Ins. Co. v. Easley*, 90 Ohio App.3d 525, 630 N.E.2d 6 (10th Dist.1993). When engaging in this analysis, an appellate court must remember that the weight and credibility of the evidence are better determined by the trier of fact. *Id.*

*Krzywicki v. Galletti*, 2015-Ohio-312, 27 N.E.3d 991, ¶ 32 (8th Dist.). "Sufficiency challenges the burden of production and is a test of adequacy." *Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 11, citing *Thompkins*, 78 Ohio St.3d 380 at 386, 678 N.E.2d 541.

**{¶42}** Our review of the record reveals that Shaw's assignments of error fail under both standards

### 3.    Analysis

**{¶43}** The crux of Shaw's argument is that Ronfeldt was not entitled to damages for the 2,623 parts manufactured and shipped to Pall on October 26, and October 29, 2012 because Ronfeldt had actual knowledge of noncompliance due to the laboratory test results issued on October 17, 2012. As a result, Shaw argues that Ronfeldt was the proximate or intervening cause of those damages so Shaw is not liable under R.C. 1302.88(C) and 1302.89(B).

**{¶44}** In determining whether a connection between the causative negligence and resulting damage is broken by an act of intervention, the question is whether the intervening cause was reasonably foreseeable in light of the attendant circumstances. *Cascone v. Herb Kay Co.,* 6 Ohio St.3d 155, 159-160, 451 N.E.2d 815 (1983), citing *Neff Lumber Co. v. First Natl. Bank of St. Clairsville, Admr.*, 122 Ohio St. 302, 309, 171 N.E. 327 (1930). The test is "whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor." *Cascone* at 160.

**{¶45}** It is axiomatic that consequential damages must be proximately caused by the breach, must relate and correspond to the injuries resulting from the breach and that recovery is not designed to put the party in a better position than if the breach had not occurred. *World Metals, Inc. v. AG Gas, Inc*, 142 Ohio App.3d 283, 755 N.E.2d 434 (9th Dist.2001), and *Penny v. Miami Valley Pension Corp.*, 399 F.3d 682, 704 (6th Cir.2005).

**{¶46}** Shaw offers that *World Metals* is directly on point and should be deemed determinative here. World Metals decided to enter the stainless steel market and spent over $900,000 modifying its plant, purchasing equipment and marketing its new business. *Id.* at 285-286. World Metals purchased an AOD gas flow system from AG Gas to use in the production process. The equipment was to meet certain specifications. *Id.* at 286.

**{¶47}** World Metals had issues with the machine and was unable to reach a resolution with AG Gas. It ceased production of the stainless steel materials and filed suit against AG Gas, suing for $2,700,000 in damages. The jury awarded consequential damages of over $900,000. AG Gas challenged the award under R.C. 1302.88 and 1302.89, arguing that all of the damages awarded did not arise from the seller's breach.

**{¶48}** The appellate court entertained a single assignment of error as dispositive of the appeal. Distilled, World Metals produced a laundry list of all costs it incurred in setting up and running the new division. A number of the costs were incurred prior to breach by AG Gas. The appellate court expressed concern about the lump sump listing of damage categories presented to the jury that included costs such as general overhead. "The lump sum overhead figures given by World Metals gave the jury no reasonable basis on which it could calculate the consequential damages flowing from AGA's breach." *Id.* at 290. The court remanded the case for a new trial on the issues of liability and damages because the lump sum overhead figures did not provide the jury with a reasonable basis upon which it could calculate the consequential damages because it determined it would be difficult for a jury to separate liability and damage issues on retrial. *Id.*

**{¶49}** In contrast, the damages claimed in the instant case were specific and itemized. Shaw knew that the steel had to meet specifications and that the related certification was required because the steel specifications were integral to the processing and end use. Therefore, it was reasonably foreseeable by Shaw that the damages suffered would be incurred due to the nonconformance and the award was within the court's discretion. Thus, it was not unreasonable for the trial court to determine that there was no intervening act absolving Shaw of culpability. *Cascone,* 6 Ohio St.3d 155, 159-160, 451 N.E.2d 815 (1983).

**{¶50}** Ronfeldt introduced documentary and testimonial evidence that there was a three-week processing time for the steel upon receipt by Ronfeldt. Fabrication involved placing the metal through a 12-step fabrication process, part of which required processing by third party vendors. (Tr. 156-157.) In fact, Ronfeldt informed Pall that it would take three weeks from the receipt of replacement steel to provide replacement parts, substantiating the process timing. *Id.*

**{¶51}** Ronfeldt also introduced evidence that it waited for confirmation for Shaw, the seller of the nonconforming product who would ultimately bear responsibility for damages caused by the nonconformance, to provide the results of the testing it conducted prior to notifying Donaldson and Pall. The test report commissioned by Shaw was dated October 27, 2012, but confirmation was not provided until Ronfeldt contacted Shaw on November 1, 2012.

**{¶52}** Pivotal here, Shaw has presented no evidence to substantiate its position that, had Ronfeldt frozen production during the October 11, 2012 to October 17, 2012 inquiry and testing period until the November 1, 2012 confirmation by Shaw, the damages assessed to Shaw would have been lower. There is no evidence in the record that, for example, (1) some or all of the 2,623 units were manufactured after October 17, 2012; (2) the three-week fabrication process had not yet begun or concluded; and/or (3) that no damages would be incurred as to third party vendors for work in process.

**{¶53}** The law requires that damages be shown with a reasonable degree of certainty and speculative damages are not recoverable. *Glenwood Homes v. State Auto Mut. Ins. Co.*, 8th Dist. Cuyahoga No. 72856, 1998 Ohio App. LEXIS 4656, *16 (Oct. 1, 1998). However, we find that it is Shaw's claim for imposition of damages against Ronfeldt that is speculative and not supported by the evidence. To that end, "[t]he purpose of Civ.R. 59 is not to simply allow a party a second opportunity to present evidence that should have been presented at the first trial." *Riesbeck*, 7th Dist. Monroe No. 08 MO 11, 2009-Ohio-6250, ¶ 16.

**{¶54}** This court finds that (1) viewing the evidence in a light most favorable to Ronfeldt, the trial court's decision is supported by competent, credible evidence and was not against the manifest weight of the evidence; and (2) the trial court did not abuse its discretion in

finding that Shaw was responsible for remanufacturing the 6,727 units. Accordingly, Shaw's first and second assignments of error are overruled.

**{¶55}** Judgment affirmed.

It is ordered that appellee recover from appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

LARRY A. JONES, SR., A.J., and
FRANK D. CELEBREZZE, JR., P.J., CONCUR