MICHELSON et al., Appellants,

v.

KRAVITZ, Appellee.*

[Cite as *Michelson v. Kravitz* (1995), 103 Ohio App.3d 301.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67342.

Decided May 8, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 74 Ohio St.3d 1404, 655 N.E.2d 184.

*Michael J. Rogan,* for appellants.

*John F. Gannon,* for appellee.

PATRICIA ANN BLACKMON, Judge.

Michael B. and Susan Michelson, plaintiffs-appellants, appeal the trial court's decision denying their motion for a new trial and the jury verdict in favor of Robin Kravitz, defendant-appellee. Michael and Susan Michelson assign the following errors for our review:

"I. The trial court committed reversible error in denying appellants' motion for a new trial because the jury's determination of comparative negligence was clearly based on an impermissible quotient verdict.

"II. The trial court committed reversible error by striking the affidavit of a juror which provided further evidence of a prior agreement to be bound by a quotient verdict.

"III. The trial court committed reversible error in denying appellants' motion for a new trial because the verdict was not based on ¾ of the jurors' findings and is inconsistent and irreconcilable with the jurors' answers to interrogatories.

"IV. The trial court committed reversible error by answering juror questions in the absence of counsel for either party.

"V. The trial court committed reversible error in denying appellants' motion for a new trial where the jury's determination of damages was inconsistent with their findings of negligence and against the manifest weight of the evidence."

Having reviewed the record of the proceedings and the legal arguments presented by the parties, we affirm the decision of the trial court. The apposite facts follow.

On May 21, 1991, Michael Michelson was operating his motorcycle in the far right eastbound lane of Carnegie Avenue in the city of Cleveland. Robin Kravitz was operating his motor vehicle in the eastbound lane next to Michelson, when Kravitz changed into Michelson's lane in front of Michelson, and slowed down to turn right into a driveway. Michelson was unable to stop his motorcycle and collided with Kravitz's motor vehicle. As a result of the collision, Michelson suffered serious injuries.

Michael Michelson and his spouse, Susan Michelson, filed an action against Robin Kravitz seeking compensatory damages for negligence and loss of consortium. The case proceeded to a trial by jury. The jury rendered a verdict in favor of the defendant. The jury's "Interrogatory 5" indicated that Michael Michelson was fifty-seven percent negligent and Robin Kravitz was forty-three percent negligent. By each juror's name were different apportionments of the negligence as follows:

| "Juror | Def./Plt. | Juror | Def./Plt. |
| --- | --- | --- | --- |
| "1. ——— | 50%/50% | 2. ——— | 25%/75% |

| "3. —— | 60%/40% | 4. —— | 50%/50% |
| "5. —— | 0%/0% | 6. —— | 40%/60% |
| "7. —— | 40%/60% | 8. —— | 40%/60%" |

After the jury was excused, Michael and Susan Michelson filed a motion for a new trial. They argue that the jury rendered an impermissible quotient verdict, the jury's interrogatories were inconsistent with the general verdict, the trial court communicated with the jury without counsel's participation, and the verdict was inconsistent with the findings of negligence and against the weight of the evidence.

In support of the motion, they filed two affidavits: the affidavit of juror "3," Lynn K. Riek, and the affidavit of plaintiff's trial counsel, Michael J. Rogan. The affidavits revealed that the jurors agreed in advance to each calculate percentages and average them to come up with the resulting fifty-seven/forty-three apportionment of negligence. The affidavits also revealed that the jury sent questions to the court and that Judge Patricia Cleary responded by directing the jury to read the instructions that had been provided.

In response to the motion, Kravitz filed a motion to strike the affidavit of Lynn Riek as inadmissible under Evid.R. 606(B) and filed a brief in opposition to the motion for new trial. The motion to strike the affidavit was granted, and the motion for a new trial was denied. This appeal followed.

"The granting or refusing of a motion for a new trial rests largely within the sound discretion of the trial court and that court's ruling on such motion shall not be disturbed by an appellate court absent a showing that the trial court abused its discretion." *Berkey v. Senn* (1989), 65 Ohio App.3d 288, 291, 583 N.E.2d 1027, 1029, citing *Steiner v. Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E.2d 855; *Yungwirth v. McAvoy* (1972), 32 Ohio St.2d 285, 61 O.O.2d 504, 291 N.E.2d 739. "The term 'abuse of discretion' encompasses more than just an error of law or judgment, but requires that the trial court's action or attitude was unreasonable, arbitrary or unconscionable." *Berkey, supra,* at 291, 583 N.E.2d at 1029.

Civ.R. 59(A) provides:

"Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds: (1) Irregularity in the proceedings of the court, jury, referee, or prevailing party, or any order of the court or referee, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial; (2) Misconduct of the jury or prevailing party; * * * (4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice; * * * (6) The judgment is not sustained by the weight of the evidence * * *."

■ The threshold question in this case is presented in the second assignment of error of Michael and Susan Michelson: whether the affidavit of Lynn Riek was admissible to prove an irregularity in the proceedings of the jury or jury misconduct.

Evid.R. 606(B) provides:

"Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. *A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented.* However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes." (Emphasis added.)

■ The rule conforms to Ohio's *aliunde* rule. *State v. Adams* (1943), 141 Ohio St. 423, 25 O.O. 570, 48 N.E.2d 861. The *aliunde* rule requires the introduction of evidence from a competent source other than a juror to impeach a jury verdict." Evid.R. 606(B), Staff Note.

In *Lund v. Kline* (1938), 133 Ohio St. 317, 10 O.O. 411, 13 N.E.2d 575, the Supreme Court of Ohio established the standard as follows:

"The vitiating element in a 'quotient verdict' is not in the acceptance of the quotient figure as the amount of the verdict, but rather in the prior agreement to be bound by such figure, regardless of what it may be. If, after the amount has been ascertained by striking an average, the respective jurors deliberately assent to and accept the amount so obtained as, in their opinion, being a just and fair verdict, and so return it, it will not be legally objectionable. 39 Ohio Jurisprudence, 1104, Section 375.

"Proof of a prior agreement to be bound by the quotient result cannot be furnished by affidavits or testimony of the jurors themselves, but must be by evidence *aliunde*. When such evidence is introduced it forms the basis for the introduction of the affidavits and testimony of jurors. However, the ballots and slips of paper retrieved from the jury room do not furnish evidence *aliunde* of misconduct. These, as the trial court well said, are as consistent with a proper as with an improper determination of the case by the jury. Misconduct of a jury

will not be presumed, but must be affirmatively proved. The law will presume proper conduct on their part. Clear and positive evidence *aliunde* is necessary to overcome this presumption." *Id.* at 320, 10 O.O. at 412, 13 N.E.2d at 576. See, also, *Berkey v. Senn, supra,* 65 Ohio App.3d at 293, 583 N.E.2d at 1030 (where papers left in the jury room merely exhibited quotient figures); *Sedgwick v. Kawasaki Cycleworks, Inc.* (1991), 71 Ohio App.3d 117, 593 N.E.2d 69.

In the case *sub judice,* the quotient figures handwritten on the jury "Interrogatory 5" do not affirmatively prove a prior agreement. The quotient figures on the interrogatory, alone, are clearly consistent with a proper jury determination. The quotient figures on the interrogatory, absent evidence *aliunde* of a prior agreement, do not overcome the presumption that the jury's deliberation was proper. Because there was insufficient evidence *aliunde,* the affidavit of juror Lynn Riek was properly stricken. Accordingly, the trial court did not abuse its discretion.

The first and third assignments of error are premised upon the admission of the affidavit or testimony of jurors to impeach the validity of the verdict. Because this evidence was properly stricken by the trial court, these assignments of error have no merit.

The fourth assignment of error raises the question of whether the trial court's *ex parte* communication with the jury was prejudicial error. "As a general rule, any communication between judge and jury that takes place outside the presence of the defendant or parties to a case is error which may warrant the ordering of a new trial." *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 147, 524 N.E.2d 881, 886. Such an error is harmless where the *ex parte* communication did not prejudice the appellant. *Id.* (held no prejudice where trial court merely refused to supply the jury with written instructions).

"Those cases which have found a defendant or party to have been prejudiced by an *ex parte* communication between judge and jury involved the possibility that the jury's verdict might have been influenced by the judge's response." *Id.* The trial court in the instant case, however, merely told the jury to read the instructions already given to them. There is no possibility that the jury's conclusion was influenced by the trial court's admonition. Accordingly, the trial court's *ex parte* communication was harmless error.

The fifth assignment of error raises the question of whether the trial jury's determination of damages was not sustained by the weight of the evidence. A new trial should be granted under Civ.R. 59(A)(6) where it appears that the jury awarded inadequate damages because it failed to consider uncontroverted evidence of damages. See *Dillon v. Bundy* (1991), 72 Ohio App.3d 767, 773, 596 N.E.2d 500, 504. However, in assessing whether a verdict is against the manifest

weight of the evidence, a trial court is vested with "wide discretion" to determine manifest injustice. *Id.*

In the case *sub judice,* the jury assessed zero damages to Michael and Susan Michelson in spite of their uncontroverted evidence of injury. From this fact alone, one might conclude that the damages the jury awarded to the Michelsons were clearly inadequate. However, had the jury assessed damages consistent with the evidence, the Michelsons still would not have recovered because the jury rendered a defense verdict in favor of Kravitz. Accordingly, the jury's assessment of inadequate damages for the Michelson's injuries did not create a manifest injustice.

The judgment is affirmed.

*Judgment affirmed.*

MATIA and KARPINSKI, JJ., concur.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 74 Ohio St.3d 1404, 655 N.E.2d 184.