JOURNAL ENTRY AND OPINION
{¶ 1} Defendants-appellants/cross-appellee Zaremba Management Company and Zaremba Group, L.L.C. (hereinafter Zaremba or appellant) appeal from the trial court's decision to grant the motion for judgment notwithstanding the verdict (JNOV) filed by the plaintiff-appellee/cross-appellant Mary Ann Orenski. The appellee filed the cross-appeal contesting the trial court's denial of her motion for a new trial. Subsequent to the jury's defense verdict, the trial court granted the appellee's motion for a JNOV and awarded $40,000 to the appellee. This court has previously considered this case. In Orenski v.Zaremba Mgt. Co. (Dec. 7, 2000), Cuyahoga App. Nos. 77368, 77369, this court reversed and remanded the trial court because it failed to state its reasons for entering the JNOV as required by Civ.R. 50(E). This court set forth the following facts:
 {¶ 2} Mary Orenski filed a lawsuit against Zaremba after she sustained an injury when a ten foot aluminum ladder blew over and hit her as she exited the front door of her brother's apartment building. Orenski testified she saw the ladder near the entrance doors when she first entered the building. She added when she exited the building she walked away from the ladder at a distance of approximately fifteen feet before she was struck. Orenski testified she sustained a cut leg and a severe bruise. She later developed a blood clot in the leg that had to be removed via surgery. She testified she suffered severe pain due to the injury and, as of the time of trial, she continued to have pain and swelling in the leg upon exertion.
 {¶ 3} Orenski testified she suffered from mild arthritis in her hands and her cervical spine and was diagnosed with Paget's disease in 1990. However, she testified she had suffered no pain from that condition. She also testified about an automobile accident in 1989 in which she suffered fractures of her tibia, right arm, radius, and ulna.
 {¶ 4} Orenski also presented videotaped deposition testimony from orthopedic surgeon Dr. Kenneth Chapman who testified he examined Orenski at Lakewood Hospital. While her initial x-rays showed no fractures, Orenski testified a bone scan revealed fractures of the proximal fibula, distal fibula, and tarsal bones of the foot. Dr. Chapman testified he did not know Orenski to have Paget's disease and the condition does not normally affect the skeleton of the trunk and head. He added the injuries Orenski suffered in the 1989 car accident were not related to the injuries she sustained when hit by the ladder. He added Orenski suffered permanent discoloration and scarring as a result of her injuries and would likely always have pain with over-exertion and change of weather.
 {¶ 5} The defense presented the testimony of Zaremba's building superintendent John Johns. Johns denied it was excessively windy on the day of the accident, describing the weather as "breezy." He testified, while working on the ladder, he was not concerned that he might be blown off the ladder by the wind. He noticed no gusts of wind. He stated he left the ladder to go inside the building for a light bulb and was gone only about three minutes.
 {¶ 6} On cross-examination, Johns acknowledged the possibility that aluminum ladders could tip over in windy conditions. He also testified he was aware that the ladder contained a warning label urging caution when using the ladder during windy conditions.
 {¶ 7} The defense also presented the testimony of orthopedic surgeon Dr. Malcolm Brahms who testified he saw Orenski on February 15, 1999. He added Orenski exhibited normal motion in her knee joint. He noted she had a scar on the outside of her right knee and residual discoloration of the right lower extremity. He also testified his review of Orenski's x-rays showed no evidence of any fractures. He also said the x-rays showed significant demineralization in the lower extremity and evidenced deformities resulting from Paget's disease. He opined these conditions preceded the accident with the ladder. He opined Orenski suffered no permanent injury other than the discoloration and the residual swelling.
 {¶ 8} The jury ruled in favor of Zaremba. Orenski filed a motion for a new trial or, alternatively, for judgment notwithstanding the verdict. The trial court denied the motion for a new trial and granted the motion for judgment notwithstanding the verdict. The court entered judgment in favor of Orenski in the amount of $40,000. Zaremba appealed the trial court's decision to grant the motion for judgment notwithstanding the verdict. (App. No. 77368) Orenski appealed the amount of the judgment. (App. No. 77369) The appeals were consolidated for hearing and disposition before this panel.
{¶ 9} One day prior to the filing of the above appeals, the appellee moved the court for a modification of the record pursuant to App.R. 9(E)[1]. The motion states that during its deliberation, the jury sent a written question to the judge, "involving their consideration of, or their desire to consider, assumption of risk and contributory negligence. The court allegedly provided its own written response with the answer `No.'" Plaintiff's motion for modification of the record, filed 12/8/99. The appellant filed no objections or brief in response to the appellee's motion. On December 14, 1999, the trial court granted the appellee's motion to modify. Vol. 2410 page 122.
{¶ 10} On September 24, 2001, the trial court's entry stating its reasons for granting the JNOV was journalized in the trial court. The court held in pertinent part:
 {¶ 11} In compliance with the appellate court mandate, this Court hereby states its reasons for entering JNOV in favor of the plaintiff.
 {¶ 12} Plaintiff presented several witnesses and reports of weather conditions indicating that there were very windy conditions at the time the defendant's employee left a ten-foot tall aluminum ladder unattended directly in front of the entrance to the apartment building where the plaintiff was exiting. On the day in question, March 26, 1998, plaintiff, Mary Ann Orenski, age 76, was visiting her ill 89-year-old brother, James Orenski, who lived in the apartment building owned and managed by defendant Zaremba Management Co. Plaintiff had testified that she was visiting the apartment to take soup to her ill brother. She was, therefore, an invitee of the defendant, and a duty was owed to her to keep the premises in a reasonable safe condition and to use ordinary care under the circumstances. Bowins v. Euclid General Hospital (1984), 20 Ohio App.3d 29; Patete v. Benko (1986), 29 Ohio App.3d 325. The standard for granting JNOV is that the court must decide, after construing the evidence most strongly in favor [of the party] against whom the motion is made, whether reasonable minds could come to but one conclusion upon the evidence submitted, that conclusion being adverse to the non-moving party. Gallagher v. Cleveland Browns Football Co. (1996), 74 Ohio St.3d 427.
 {¶ 13} There appeared to be no conflicting evidence during the trial as to the defendant's employees' failure of due care in leaving the ladder unattended at the entrance to the apartment building in very windy conditions. Reasonable minds could only conclude that the defendant's employee acted negligently, and the defendants failed to keep the entranceway in a reasonably safe condition.
 {¶ 14} This Court awarded $40,000.00 in damages upon entering JNOV because the defendant suggested in closing argument that the plaintiff's injuries were worth $50,000.00 to $60,000.00.
{¶ 15} The appellee asserts two cross-assignments of error. The first cross-assignment of error is dispositive of this appeal and will thus be considered first.
{¶ 16} The first cross-assignment of error:
 {¶ 17} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING PLAINTIFF'S-APPELLEE'S MOTION FOR A NEW TRIAL BECAUSE THERE WERE IRREGULARITIES IN THE PROCEEDINGS THAT DENIED PLAINTIFF A FAIR TRIAL.
{¶ 18} The appellee posits that the trial court should have granted a new trial because it answered the jury's questions without notification to counsel or the parties. The appellee argues that this communication was an irregularity in the proceeding of such magnitude so as to have denied her a fair trial.
{¶ 19} To resolve this issue, additional facts are of import. In the appellee's opening statement to the jury, counsel stated, "You will hear evidence that explains and will show you that Mary Ann did nothing to cause or contribute to this incident" (T. 17). The appellant countered with its own statement during opening argument that:
 {¶ 20} It was windy from when she left her apartment to go visit her brother's apartment and, when she walked into the apartment, she know it was a windy day. She actually went to the right of the ladder to avoid the ladder when she entered the apartment. Then you are going to hear her testify that, as she was leaving the apartment, she recognized that the ladder was still there as she was going through the vestibule area and she said she made an effort to go to the left, around the ladder. (T. 22).
{¶ 21} * * *
 {¶ 22} In this respect, you have to keep in mind negligence, whether or not the Plaintiff did anything to contribute to her injures and the proximate cause, which the Judge will instruct you on, and he mentioned earlier, once you get past all those elements, they have to meet their burden of proof with respect to all those elements, then you get to the damages. (T. 25)
{¶ 23} As noted earlier, the appellee did indeed testify at trial on direct examination that it was windy and that she had attempted to avoid the ladder (T. 35, 52). On cross-examination, the appellee testified again that she observed the ladder as she approached the building (T. 56, 58) and she intentionally walked to the left to avoid the ladder (T. 61).
{¶ 24} At the close of the appellee's evidence, the appellant moved for a directed verdict on the argument that it owed no legal duty to warn of an open and obvious condition (T. 96). The appellant noted that the appellee had observed the ladder upon entering the building, knew it was a windy day, admitted that the conditions concerned her, and that she attempted to avoid the ladder (T. 97). The trial court summarily overruled this motion (T. 99). The court then noted that the appellant requested jury instructions which were to be made a part of the record (T. 99). During his testimony, the building superintendent stated that he did not consider moving the ladder when he entered the building to obtain a new light bulb for the outside light because it was not windy enough to warrant such an action (T. 113, 118). The renewed motion for a directed verdict made by the appellant at the conclusion of all evidence was denied (T. 122).
{¶ 25} During closing argument, counsel for the appellee essentially asserted that negligence had been committed by the building superintendent. The appellant countered by reiterating that the appellee knew of the presence of the ladder and its potential danger and that the accident was unforeseeable. Finally, the appellant was permitted to state for the record that it had requested: 1) an instruction on comparative negligence, duty to look, duty to look effectively and duty to continually look; 2) a quotient verdict instruction; and, 3) jury interrogatories. All three were denied.
{¶ 26} A motion for a new trial is permitted under Civ.R. 59. The rule sets forth various reasons that a trial court may grant a new trial, including irregularities in the proceedings that denied a litigant a fair trial. Specifically, the rule states that a new trial may be granted to all or any of the parties where there is an irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial. Civ.R. 59(A)(1). In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown.
{¶ 27} Recently, in State v. Herring, 2002 Ohio 796,94 Ohio St.3d 246, 762 N.E.2d 490, the Ohio Supreme court cited to Bosticv. Connor (1988), 37 Ohio St.3d 144, 524 N.E.2d 881, paragraph four of the syllabus, for the proposition that it has repeatedly held that a trial judge may not communicate with the jury in the absence of the defendant. To prevail on a claim of prejudice due to an ex parte communication between judge and jury, the complaining party must first produce some evidence that a private contact, without full knowledge of the parties, occurred between the judge and jurors which involved substantive matters. State v. Schiebel (1990), 55 Ohio St.3d 71,564 N.E.2d 54, citing State v. Jenkins (1984), 15 Ohio St.3d 164, 236,473 N.E.2d 264. Discussions between a judge and a juror of legal issues involved in the case, applicable law, a charge to the jury, or a fact in controversy could potentially involve substantive matters. See State v.Musgrave, 2000 Ohio App. LEXIS 1813 (Apr. 24, 2000), Knox App. No. 98CA10, unreported, 2000 WL 502688, at 9.
{¶ 28} In Michelson v. Kravitz (1995), 103 Ohio App.3d 301, this court noted that as a general rule, any communication between judge and jury that takes place outside the presence of the defendant or parties to a case is error which may warrant the ordering of a new trial, Bostic v.Connor (1988), 37 Ohio St.3d 144, 147, 524 N.E.2d 881, 886, but that such an error is harmless where the ex parte communication did not prejudice the appellant.
{¶ 29} In the case sub judice, this court finds that the ex parte contact between the judge and the jury, without knowledge or consent of the parties, was prejudicial. The jury heard through the arguments of counsel and the questioning of the witnesses that the appellee, in the opinion of the appellant, contributed to her injuries. It was the opinion of the appellee that she did nothing to contribute to her injuries. Antithetical arguments could confuse the jury in the absence of any illuminating jury instructions by the court. Therefore, the trial court erred by instructing the jury that assumption of risk and contributory negligence were not to be considered by them. Further, the trial court erred by instructing the jury without consultation with the parties and their attorneys being advised or present in the room.[2]
{¶ 30} The appellee's first cross-assignment of error is sustained.
{¶ 31} The appellant sets forth the following two assignments of error.
 {¶ 32} THE TRIAL COURT ERRED IN GRANTING PLAINTIFF'S MOTION FOR JNOV WHEN THE RECORD CONTAINS EVIDENCE SUPPORTING THE JURY'S VERDICT. THE TRIAL COURT'S JOURNAL ENTRY WAS FILED ON NOVEMBER 10, 1999.
 {¶ 33} THE TRIAL COURT ERRED IN GRANTING PLAINTIFF'S MOTION FOR JNOV ON THE ISSUE OF DAMAGES BASED ON DEFENDANT'S STATEMENT IN CLOSING ARGUMENTS.
{¶ 34} The appellee set forth a second cross-assignment of error:
 {¶ 35} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING PLAINTIFF'S-APPELLEE'S MOTION FOR A NEW TRIAL BECAUSE THE DEFENSE VERDICT WAS NOT SUSTAINED BY THE WEIGHT OF THE EVIDENCE.
{¶ 36} These assignments of error are moot pursuant to App.R. 12.
Judgment reversed and remanded for a new trial.
This cause is reversed and remanded.
It is, therefore, considered that said appellant(s) recover of said appellee(s) their costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
PATRICIA A. BLACKMON, J., and ANNE L. KILBANE, J., CONCUR.
[1] {¶ a}App.R. 9(E) states as follows:
{¶ b}(E) Correction or modification of the record. If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals.
[2] This is not to say that the court's refusal to give the appellants proposed jury instructions was error in and of itself. That issue was not raised before this court.