[Cite as *Locigno v. 425 W. Bagley, Inc.*, 2016-Ohio-5924.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 103379**

---

## NATALIE LOCIGNO

PLAINTIFF-APPELLEE

vs.

## 425 WEST BAGLEY, INC., ET AL.

DEFENDANTS-APPELLANTS

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-06-594535

**BEFORE:** Jones, A.J., McCormack, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** September 22, 2016

**ATTORNEY FOR APPELLANT**

Stephen McGowan
19211 Westbrooke Lane
Strongsville, Ohio 44149


**ATTORNEYS FOR APPELLEE**

In Son J. Loving
Lewis A. Zipkin
Zipkin Whiting Co., L.P.A.
3637 South Green Road
Cleveland, Ohio 44122

James T. Schumacher
1419 West 9th Street, 2nd Floor
Cleveland, Ohio 44113

David M. Smith
Mazanec Raskin, Ryder Co., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, Ohio 44139

LARRY A. JONES, SR., A.J.:

**{¶1}** Defendants-appellants, 425 West Bagley Inc., and its owners, husband and wife, Paul and Vivian Zacharias, and their son, Paul Zacharias, Jr., appeal the trial court's denial of their post-trial motions. We affirm.

**{¶2}** Plaintiff-appellee Natalie Locigno worked at Zach's Steakhouse in Berea as a bartender and server from March 2004 until January 2005. Zach's was a "family" restaurant and bar owned by the Zachariases. According to Locigno, Paul Sr. sexually harassed her on an almost daily basis by asking her to kiss him, making sexual comments, and touching her breasts and buttocks. Locigno alleged that she reported Paul Sr.'s behavior to Vivian and Paul Jr., but they ignored her complaints.

**{¶3}** In 2006, Locigno filed suit against the Zachariases, alleging sexual harassment, sexual discrimination, retaliation, negligent retention, and intentional infliction of emotional distress. The matter proceeded to a jury trial.

**{¶4}** Locigno testified that when she arrived for her first day of work, Paul Sr. asked for a "hello kiss." She felt as though she had to give Paul Sr. a kiss during every shift and during some of these kisses he would even try to put his tongue in her mouth. His behavior was not limited to Locigno. Paul Sr. would tell the female waitstaff to "line up" "for your good morning kiss." Paul Sr. made numerous comments on Locigno's appearance and body and offered to buy her and the other female staff lingerie. Throughout her employment at the restaurant, Paul Sr. touched, grabbed, or swatted Locigno's buttocks and breasts and made comments of a sexual nature.

{¶5} Locigno testified that Paul Jr., who also worked at the restaurant, once told her that his penis was like a can of Red Bull and would often called her stupid. Paul Jr. kept pornography on his office computer and would offer to show it to Locigno and other employees. Paul Sr. kept adult magazines at the restaurant; one popular adult magazine was delivered directly to the restaurant. Vivian denied that the magazine was delivered to the restaurant, but Paul Jr. admitted that they received it on a monthly basis.

{¶6} Locigno reported the harassment by Paul Sr. to both Paul Jr. and Vivian, but according to Locigno, they did nothing to change the atmosphere at the restaurant. Vivian told Locigno she could get another job if she was not happy in her current position.

{¶7} Near the end of her employment with Zach's, Locigno made a tape recording of an encounter with Paul Sr. in his office. She told him that she did not feel comfortable with him touching her. Paul Sr. responded, "I do it because I know it makes you feel f***ed up and nervous." He then asked her to give him a hug.

{¶8} Tanya Roberts, who worked at Zach's around the same time as Locigno, testified that she felt obligated to kiss Paul Sr. and witnessed him kiss and touch other female servers, including Locigno. Roberts reported an incident of inappropriate touching to Vivian, but according to Roberts, Vivian did not believe her and told Roberts not to talk about it. Gina Gramuglia, who also worked at Zach's around the same time as Locigno, testified that she witnessed Paul Sr. kiss female servers and touch them on the buttocks, use "foul language," and "talk dirty" to female staff. Susan Scardino testified that she worked at Zach's and witnessed servers kissing Paul Sr. as they arrived for their

shifts and saw him grab the buttocks of female staff as they walked by his regular booth. She also saw Paul Jr. watch porn in his office "at least once a week."

{¶9} Vivian testified that she was at the restaurant five to six days a week, working in the kitchen and always during the day. She denied she received complaints that Paul Sr. kissed or inappropriately touched female staff. She admitted that Locigno approached her shortly before she quit and she told Locigno that she could find another job if she was not happy working at Zach's.

{¶10} Paul Jr. testified that he worked everyday at Zach's from morning to night, either in the kitchen or in the office. He admitted to calling Locigno stupid. He admitted that Locigno complained to him about having to kiss Paul Sr. and testified that he sat his father down and had a talk with him about it.

{¶11} Paul Sr. testified that it was not a requirement for his female servers to kiss him, but that he could not remember any that had worked for him that he had not kissed. He admitted to offering to buy female employees clothing, lingerie, and jewelry. He admitted to offering to buy Locigno a bra "[i]f she wanted one" because "she needed a little sprucing up." He denied ever touching Locigno's breasts or buttocks, except maybe by accident.

{¶12} The jury returned a verdict in favor of Locigno. The jury awarded $3,400 in lost wages and $25,000 for pain and suffering on the sexual harassment claim against each of the Zachariases and $50,000 in punitive damages against Paul Sr. plus attorney fees in an amount to be determined by the court. After the jury verdict, the Zachariases moved

for judgment notwithstanding the verdict ("JNOV"), or in the alternative, for a mistrial or a new trial. The trial court denied the motions. Locigno moved for attorney fees based on the award of punitive damages, and the trial court awarded her $99,370 in attorney fees.

{¶13} The Zachariases appealed and raise three assignments of error for our review. Further facts will be discussed under the appropriate assignments of error.

I. The trial court erred by denying the individual defendants motions for judgment notwithstanding the verdict and/or motions for a mistrial/new trial based on prejudicial counsel misconduct during the trial and closing argument.

II. The trial court committed plain error by erroneously changing the burden of proof on punitive damages and attorneys fees from clear and convincing to preponderance of the evidence on the interrogatories given to the jury prior to their deliberations.

III. The trial court erred by engaging in ex parte communications with the jury during their deliberations without notifying counsel where juror misconduct was reported to the judge; the judge should have subjected the jury to voir dire on the misconduct allegations.

I. Law and Analysis

A. JNOV and Motion for New Trial

{¶14} "A Civ.R. 50(B) motion for judgment notwithstanding the verdict tests the legal adequacy of the evidence * * * so it is based solely on the evidence produced at trial." (Citation omitted.) *Jones v. MetroHealth Med. Ctr.*, 8th Dist. Cuyahoga No. 102916, 2016-Ohio-4858, ¶ 21. It is a question of law that does not require the reviewing

court to weigh the evidence or test the credibility of witnesses. *Di v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 101760, 2016-Ohio-686, ¶ 40, citing *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 430 N.E.2d 935 (1982). A Civ.R. 59 motion for a new trial, however, is generally reviewed under an abuse of discretion standard. *Shaw Steel, Inc. v. Ronfeldt Mfg., L.L.C.*, 8th Dist. Cuyahoga No. 102665, 2016-Ohio-1117, ¶ 33.

{¶15} The Zachariases argue that the trial court erred in denying their new trial motion based on attorney misconduct and their JNOV motions based on insufficient evidence as it relates to Vivian and Paul Jr. Because they do not challenge the court's denial of Paul Sr.'s motion for JNOV, we will not consider it.

1. Motion for New Trial

{¶16} Civ.R. 59(A)(2) states that a new trial may be granted due to misconduct of the prevailing party. The Zachariases argue that opposing counsel improperly questioned Vivian regarding previous complaints of sexual harassment against Paul Sr. and those questions prejudiced the jury against them. During Vivian's cross-examination, Locigno attempted to introduce into evidence an uncertified copy of a complaint filed in federal court that listed Paul Sr. as the defendant. As soon as Locigno referenced the document, the court dismissed the jury and a lengthy discussion was had among the court and the parties. The court ruled that Locigno could use the document to refresh Vivian's memory, but could not use it as extrinsic evidence to show that she had knowledge of prior complaints of sexual harassment against Paul Sr.:

Court: Here's what I'm going to let you ask her. I'm going to let you ask her if she was aware of complaints by anyone as to this behavior.

Counsel for Locigno: Okay.

Court: And then I will let you refresh her recollection with this and see if that refreshes her recollection. And then, at that point, she's either going to say yes it does * * * or she says no and then you're done. And that's it.

**{¶17}** In their post-trial motions, the Zachariases challenge the following comments made during Vivian's cross-examination:

Counsel for Locigno: Handing you what has been marked as Plaintiff's Exhibit 8, please read to yourself the front, please. Please turn to page two and read paragraph six.

* * *

Counsel for Locigno: Were you aware of complaints by anyone about Paul Zacharias' behavior regarding being forced to kiss him prior to Natalie's complaint to you?

Vivian: No.

Counsel for Locigno: Now, please turn to page two and read to yourself paragraphs six, seven, and eight. Does that refresh your recollection about any prior complaints about Paul Zacharias asking his employees to kiss him?

Court: Sustained.

Counsel for Locigno: Does that refresh your recollection regarding your previous answer?

Court: Sustained.

Counsel for Locigno: Would you read the rest?

Court: That's not the question that I indicated you could ask.

Counsel for Locigno:    Does this document refresh your recollection?

Vivian: No.

Counsel for Locigno:    Okay, that's all we're going to do about that particular document.

Counsel for Zacharias:    Objection, Your Honor, for the commentary.

Court:    Sustained. That will be stricken; the jury will ignore it.

{¶18} After Valerie's testimony, one of the jurors submitted a question to the court inquiring whether Paul Sr. had been "involved in a similar case before this trial."   The court told the jury "we'll not ask that."

{¶19} A review of the record shows that no misconduct occurred.   Counsel attempted to use the federal court document to show that Vivian had prior knowledge of Paul Sr.'s behavior.   The trial court severely restricted the scope of counsel's questions and when counsel overstepped the court's limitations, the court sustained objections.

{¶20} The Zachariases further claim that counsel deliberately interjected bias and prejudice into the proceedings by referring to a tape recording during counsel's closing argument.

{¶21} During the trial, counsel for Locigno played the tape recording of the conversation she had made in Paul Sr.'s office.   While going over the evidence to be submitted to the jury, the trial court decided that the tape itself would not go back to the jury as evidence to use during its deliberations because of the poor quality of the recording.   The court reminded the parties that it had allowed the tape to be played during trial "so let the jury determine what use it might be."   During closing arguments, counsel

for Locigno referenced the tape-recorded conversation and again played the tape for the jury. In their post-trial motions, the Zachariases argue that the court erred in allowing counsel to do so and counsel's misconduct supports a new trial. We disagree.

{¶22} As a general rule, "great latitude is afforded counsel in the presentation of closing argument to the jury." *Di*, 8th Dist. Cuyahoga No. 101760, 2016-Ohio-686, at ¶ 104, citing *Pang v. Minch*, 53 Ohio St.3d 186, 194, 559 N.E.2d 1313 (1990). "'[T]he determination of whether the bounds of permissible argument have been exceeded is, in the first instance, a discretionary function to be performed by the trial court. Therefore, the trial court's determination will not be reversed absent an abuse of discretion.'" *Di* at ¶ 105, citing *Caruso v. Leneghan*, 8th Dist. Cuyahoga No. 99582, 2014-Ohio-1824, ¶ 57.

{¶23} We find that no abuse of discretion occurred in this case. Although the trial court decided not to allow the tape to be submitted to the jury for the jury's consideration, the trial court had previously allowed the tape to be played for the jury; thus, the tape was already in evidence. Counsel was commenting in closing arguments on what he believed the evidence had shown, a permissible form of advocacy for his client.

{¶24} The Zachariases are unable to show that Locigno's counsel's actions rose to the level of misconduct in order to justify a new trial, and the trial court did not abuse its discretion in denying their motion.

2. JNOV

{¶25} Paul Jr. and Vivian argue that the trial court erred in denying their JNOV motions.

**{¶26}** In order to establish a claim of hostile-environment sexual harassment, the plaintiff must show:

(1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,' and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

*Hampel v. Food Ingredients Specialties*, 89 Ohio St.3d 169, 175, 729 N.E.2d 726 (2000).

**{¶27}** In their JNOV motions and on appeal, Paul Jr. and Vivian focus on the fourth prong, claiming that once Locigno advised them what Paul Sr. was doing, they told her she no longer had to kiss Paul Sr. and the harassment ceased; therefore, the jury's verdict was unsupported by the evidence. The record, however, does not support their claims.

**{¶28}** Paul Jr., son of Paul Sr. and Vivian, held a supervisory position over Locigno. The testimony at trial shows not only that he was aware of his father's actions towards Locigno and other female employees, but engaged in questionable behavior himself.

**{¶29}** Locigno testified that Paul Jr. had pornography on his work computer, would show it to her, and would ask her what she thought of it. Paul Jr. compared his penis to a can of Red Bull and spelled out the word "s-e-x" to her because he knew she did not like

to discuss sex at work. Locigno testified that she complained to Paul Jr. about Paul Sr. on a "handful of different occasions" and also complained about the way Paul Sr.'s friends treated her in the restaurant. On one occasion, Locigno complained to Paul Jr. that there were customers in the restaurant inappropriately touching her. Paul Jr. told his father, "See Dad, you think you can touch the girls, that means your friends think they can touch the girls, too."

{¶30} Locigno testified that three weeks before she ended her employment, she reported to Paul Jr. that Paul Sr. had again grabbed her breast and she did not like Paul Sr. touching her or being made to kiss him. According to Locigno, Paul Jr. told her she was "no longer" and "never required" to kiss or allow Paul Sr. to touch her. But Paul Sr. still requested it, and Locigno "still did it" because she felt "intimidated, "obligated," and "guilty."

{¶31} A review of the record also shows that Locigno presented sufficient evidence that Vivian knew or should have known of the sexual harassment. Vivian co-owned Zach's with her husband and son. She and her husband had been married for 38 years but had been separated and living apart for six or seven years. She worked in the kitchen at Zach's five to six days a week.

{¶32} Locigno testified about a conversation she had with Vivian a couple of weeks before she left Zach's, telling Vivian she "could not take it" anymore. According to Locigno, Vivian responded, "I don't blame you. I would have left, too" and then Vivian, upset, "hissed" and walked away from her. Vivian recalled the conversation also,

claiming that she told Locigno that she should find another job if she was not happy at Zach's. When asked if Vivian knew whether Paul Sr. had touched Locigno on any other occasions other than the one Locigno reported, Vivian testified: "I would think he did. I would think he did."

{¶33} Simply put, the testimony showed that inappropriate sexual harassment permeated the work atmosphere at Zach's, and was either known or should have been known to Paul Jr. and Vivian.

{¶34} In light of the above, there was sufficient evidence to sustain Locigno's claim for sexual harassment against Paul Jr. and Vivian and, thus, the trial court did not err in denying their JNOV motions.

{¶35} The first assignment of error is overruled.

B. Punitive Damages

{¶36} In the second assignment of error, the Zachariases argue that the trial court improperly changed the burden of proof for punitive damages. According to the Zachariases, the trial court gave inconsistent burdens of proof in the jury instructions and interrogatories.

{¶37} As an initial matter, the Zachariases did not object to the jury instructions on punitive damages or to any of the jury interrogatories. Civ.R. 51(A) provides that "[o]n appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." While it is true that even where

error is waived, reversal on appeal may be predicated on plain error. In a civil proceeding, plain error involves those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material, adverse effect on the character of, and public confidence in, judicial proceedings. *See Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122, 679 N.E.2d 1099 (1997).

{¶38} The trial court has the duty to instruct the jury on the applicable law on all issues raised by the pleadings and evidence, and it must give jury instructions that correctly and completely state the law. *Pallini v. Dankowski*, 17 Ohio St.2d 51, 53, 245 N.E.2d 353 (1969). Jury instructions must be reviewed as a whole. *Pastella v. Rite Aid*, 7th Dist. Mahoning No. 93 C.A. 236, 1995 Ohio App. LEXIS 5741, *14 (Dec. 21, 1995). Whether the jury instructions correctly state the law is a question of law, which we review de novo. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 575 N.E.2d 828 (1991).

{¶39} Here, the trial court correctly instructed the jury that it must find by "clear and convincing" evidence that Locigno was entitled to punitive damages pursuant to R.C. 2315.21(D)(4), and gave the jury the definition of "clear and convincing."[1]

{¶40} Civ.R. 49(B) governs the use of jury interrogatories in connection with a general verdict. The purpose of jury interrogatories "'is to elicit facts whereby the correctness of the general verdict may be tested.'" *Waldron v. Miami Valley Hosp.*, 2d

---

[1]"In a tort action, the burden of proof shall be upon a plaintiff in question, by clear and convincing evidence, to establish that the plaintiff is entitled to recover punitive or exemplary damages." R.C. 2315.21(D)(4).

Dist. Montgomery No. 14108, 1994 Ohio App. LEXIS 5433, *27 (Dec. 7, 1994), quoting *Davison v. Flowers*, 123 Ohio St. 89, 96 (1930).

{¶41} In relevant part, Civ.R. 49(B) reads:

The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. Counsel shall submit the proposed interrogatories to the court and to opposing counsel at such time. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the interrogatories shall be submitted to the jury in the form that the court approves.

{¶42} Locigno submitted proposed jury instructions and interrogatories to the court; the Zachariases did not.

{¶43} Interrogatory No. 9 stated, in part: "[D]o you find by clear and convincing evidence that defendant Paul Zacharias, Sr. exhibited a conscious disregard of Natalie Locigno's rights or safety that had a high probability of causing substantial damage?" Interrogatory No. 10 stated, in part: "[D]o you find by a preponderance of the evidence that punitive damages will be assessed?"

{¶44} Although interrogatory No. 10 incorrectly stated "preponderance of the evidence" and was therefore in conflict with the jury instructions, in considering the interrogatories as a whole, and in light of the jury instructions, we do not find that this is one of those rare and exceptional cases in which the civil plain error standard applies.

**{¶45}** A jury is presumed to follow the instructions given it by the court. *Grand Trunk W. R.R. v. Cothern*, 6th Dist. Lucas No. L-93-112, 1995 Ohio App. LEXIS 926, *15 (Mar. 17, 1995). The court did not define "preponderance of the evidence" in its instructions, but, as mentioned, it did correctly instruct on the "clear and convincing" burden of proof. Thus, we must presume that the jury concluded by clear and convincing evidence that Locigno was entitled to punitive damages.

**{¶46}** Thus, because the jury was instructed on the proper standard for punitive damages, and was given a copy of the jury instruction for deliberation purposes, this court will not find plain error in giving jury interrogatory No. 10 as it was written.

**{¶47}** The second assignment of error is overruled.

C. Ex Parte Communication

**{¶48}** In the third assignment of error, the Zachariases allege that the trial court committed reversible error when it communicated with the jury ex parte.

**{¶49}** A trial court and the parties are prohibited from having ex parte conversations with the jury. To prevail on a claim of prejudice due to an ex parte communication between judge and jury, the complaining party must first produce some evidence that a private contact, without full knowledge of the parties, occurred between the judge and jurors that involved *substantive matters*. *Orenski v. Zaremba Mgt. Co.*, 8th Dist. Cuyahoga No. 80402, 2002-Ohio-3101, ¶ 27, citing *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990). Discussions involving substantive matters between a judge and a juror could be those of legal issues involved in the case, applicable law, a charge to

the jury, or a fact in controversy. *Orenski* at *id.*

{¶50} In *Michelson v. Kravitz*, 103 Ohio App.3d 301, 659 N.E.2d 359 (8th Dist.1995), this court noted that, as a general rule, any communication between judge and jury that takes place outside the presence of the defendant or parties to a case is error that may warrant the ordering of a new trial, but that such an error is harmless where the ex parte communication did not prejudice the appellant. *Id.* at 306.

{¶51} During jury deliberations in this case, the trial judge was driving to an out-of-town judicial conference. The jury foreperson approached the trial judge's bailiff and gave the bailiff a letter. The bailiff gave the letter to another trial judge, who was sitting in for the original trial judge. The substituting trial judge called the original trial judge to discuss the letter. On the record, the original trial judge stated:

> I determined at that point that this was a letter from the [jury] foreman expressing his frustration with the jury deliberations. [The juror] did not ask the court to do anything in particular. I [the original trial judge] interpreted the letter as, again a statement of his frustrations and the difficulties with the deliberations. At that juncture I decided that the jury should just continue deliberating, frankly, *with no response to this particular communication.*

(Emphasis added.)

{¶52} The Zachariases claim that either the bailiff or the substituting trial judge then "advised the jury to continue deliberating." However, as the original trial judge stated above, no communication was had with the jury. But even if the jury had been advised to continue deliberating as the Zachariases contend, such communication was not substantive. Moreover, the Zachariases have failed to show how the alleged communication prejudiced them. In *Michelson*, *supra*, the trial court instructed the jury

to read the instructions already given to them. This court found there was "no possibility that the jury's conclusion was influenced by the trial court's admonition. Accordingly, the trial court's ex parte communication was harmless error." *Id.* at 306. Likewise, in this case, there was no possibility that such an instruction, if given, influenced the jury.

{¶53} In light of the above, the third assignment of error is overruled.

{¶54} Judgment affirmed.

It is ordered that appellee recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

LARRY A. JONES, SR., ADMINISTRATIVE JUDGE

TIM McCORMACK, J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS WITH
SEPARATE OPINION

SEAN C. GALLAGHER, J., CONCURRING:

{¶55} Although I concur with the judgment of the majority, I have serious concerns about how the juror communication was handled during deliberations. I recognize the substitute judge and, for that matter, the bailiff were put in a difficult

situation with the trial judge being out of town at a Supreme Court meeting during the deliberations. Nevertheless, why both counsel were not immediately notified of the existence of the letter, its content, and the action to be taken is troubling.

{¶56} In this case the appellants' counsel found out about the existence of the letter not from the trial judge, the substitute trial judge, or the bailiff, but from the foreperson of the jury, who called counsel on two separate occasions, apparently after the case concluded.

{¶57} Appellants' brief asserts the juror communication contained the following information:

> As the jury foreperson in this trial, I feel compelled to share the following with you. It has come to a point in the trial where the jury agrees that there was some degree of wrong doing by the Defendant and some agree that also on the Plaintiff's part. At this juncture, jurors have started to make personal attacks on others and brought others' children and even God and Religion into their decision making process. Much to my dismay, one juror has referred to two other jurors as pigs because they are business owners and the Defendant is a business owner. One has taken a personal stance and said I will never understand until this happens to my two daughters. I have tried with little or no success to mediate these events and have repeatedly read the jury charges to them. Many, mainly the women, are too passionate and can not set their passions aside to consider the testimony put before them as their basis for the decision making process. We have one juror with a sprained or strained back from a car accident that is very rational and a good juror, but, in light of his discomfort some of the other jurors are starting to leverage him because they know he is in pain and wants to just go home. I am very disturbed by the fact that some jurors are merely just wanting to send a message without making decisions based on the evidence presented and testimony that has taken place over the last 7 days.

{¶58} In the end, the jury foreperson and the remaining jurors continued deliberating and reached a verdict. For this reason, I concur with the majority that the

communication was not substantive and appellant cannot show prejudice.

{¶59} I do believe this is a case that can address best practices. When any communication is received from a jury, the best practice is for the parties to be immediately notified and given the opportunity to weigh in on any response if appropriate. This does not mean the trial court has to accept the recommendations of counsel, but they should be aware and have input. A lawyer should not have to learn about a communication from the actual juror; that should come from the court. Although the failure to notify counsel may only amount to harmless error, it is error nonetheless.